RECO INDUSTRIES, INC., COMMON PARENT CORPORATION OF CONSOLIDATED GROUP CONSISTING OF RECO INDUSTRIES, INC., AND SUBSIDIARIES, PETITIONER *V*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4861–81.    Filed December 10, 1984.

*Robert S. Parker, Jr.*, and *B. Cary Tolley III*, for the petitioner.

*Marion B. Morton* and *William L. Ringuette*, for the respondent.

OPINION

JACOBS, *Judge*:* Respondent determined the following deficiencies in the income taxes of RECO Industries, Inc., and its wholly owned subsidiaries:

| TYE Dec. 31— | Deficiency |
| --- | --- |
| 1974 | $799,448.73 |
| 1975 | 5,157.68 |
| 1976 | 393,002.56 |

The sole issue for decision is whether petitioner, which reports its income for Federal income tax purposes under the completed contract method of accounting, may compute its costs using the last-in, first-out (LIFO) method of inventory valuation.

The facts of this case have been fully stipulated and are so found. The parties' stipulation together with the accompanying exhibits are incorporated herein by this reference.

Petitioner RECO Industries, Inc., is a Virginia corporation whose principal place of business at the time of the filing of the petition was located in Richmond, VA. RECO Industries, Inc., and its wholly owned subsidiaries (hereinafter collectively referred to as petitioner) timely filed consolidated income tax returns for the years at issue with the Internal Revenue Service Center at Memphis, TN.

During the years 1974 through 1977, petitioner was engaged in the business of manufacturing and selling steel products, principally large steel tanks and steel pipes. Petitioner maintained manufacturing plants in Richmond, VA, as well as in North Carolina, South Carolina, Mississippi, Florida, Pennsylvania, and New Jersey.

---

*By order of the Chief Judge, this case was reassigned from Judge Edna G. Parker to Judge Julian I. Jacobs.

Typically, petitioner manufactured steel tanks pursuant to the terms of a purchase order. A purchase order would usually contain a specific identification of the tanks to be manufactured, the quantities, the price, the payment terms, the shipment date, and the destination. Substantially all of the purchase orders provided for advance payments.

The principal raw material used in the manufacture of petitioner's products was "raw" steel in the form of plate shape, structural shape, structural steel items such as channel, beams, and angles, and other steel items such as flanges, fittings, couplings, and weld rod. Petitioner's manufacturing process generally involved bending, rolling, drilling, and cutting the raw steel into components in the needed shapes and then welding the components together. Only petitioner's equipment and employees were involved in the manufacturing process.

Some of petitioner's steel tanks were manufactured in stages and were shipped in kit form. These tanks were assembled at the customer's site and were not accepted until onsite assembly was completed. Occasionally, petitioner was required to perform additional work after the tank was assembled at the site, which sometimes resulted in back charges. Petitioner retained all risk of loss associated with the manufactured steel tanks until the tanks were accepted by the customer.

Petitioner's general purchasing policy for raw steel and other steel materials was to make frequent purchases, taking into consideration market fluctuations in price and supply, as well as the desirability of maintaining good relationships with steel mills. Petitioner usually maintained a stock of raw steel and other steel-related materials on hand.

Approximately 25 to 28 percent of the raw steel and related materials were purchased to be held as stock on hand. The balance of the raw steel and other steel materials used by petitioner was purchased for specified contracts. In these instances, the contract or job number was designated on the purchase order sent to the supplier. Petitioner's need for raw materials in connection with other contracts, rather than the purchase order designation, dictated whether or not the materials so purchased were actually used on any given contract.

Petitioner maintained inventory accounts for raw materials and for work-in-process. During petitioner's manufacturing process, its costs of raw materials, labor, and overhead attributable to unfinished purchase orders (or long-term contracts) were accumulated in work-in-process inventory accounts. Petitioner recognized income upon the completion of a contract, at which time the associated costs were relieved from the inventory accounts and charged to its cost of goods sold.

Petitioner calculated its cost of goods sold by adding purchased raw materials, direct labor, and overhead to beginning inventory (including work-in-process inventory) and subtracting ending inventory (including work-in-process inventory). In computing gross profit in the year of completion of a contract, the costs petitioner attributed to the contract reduced gross sales.

In 1974, petitioner obtained the Commissioner's consent to report income on advance payments in accordance with section 1.451–5 of the Income Tax Regulations. Thus, during the relevant tax years, petitioner did not recognize income when it received advance payments under a long-term contract.

Petitioner sought permission to use the LIFO method of valuing inventories by filing a Form 970 with its 1974 consolidated return. Petitioner had theretofore employed the first-in, first-out (FIFO) method of valuing its inventories.

From 1974 through 1977, petitioner used the LIFO method of inventory valuation. In determining the LIFO value of its inventories, petitioner used the dollar-value method based upon one natural business unit. Petitioner used the earliest-acquisitions-during-the-year method to determine the cost of goods in closing inventories in excess of those in opening inventories. The total inventory balances shown on the schedules attached to petitioner's returns for 1970 through 1977 were as follows:

TABLE I

| | |
|---|---|
| 1970 | $812,595 |
| 1971 | 1,386,445 |
| 1972 | 1,291,633 |
| 1973 | 2,292,310 |
| 1974 | 7,015,758 |
| 1975 | 16,671,708 |
| 1976 | 22,960,998 |
| 1977 | 29,342,329 |

From 1970 through 1973, gross sales, cost of goods sold, and gross profit reported on petitioner's returns, and the ratio of gross profits to gross sales were as follows:

TABLE II

|  | 1970 | 1971 | 1972 | 1973 |
|---|---|---|---|---|
| Gross sales | $13,136,413 | $12,105,635 | $15,051,301 | $21,418,253 |
| Cost of goods sold | 10,687,296 | 9,841,263 | 12,543,432 | 17,928,073 |
| Gross profit | 2,449,117 | 2,264,372 | 2,507,869 | 3,490,180 |
| Ratio of gross profit to gross sales | 18.64% | 18.71% | 16.66% | 16.29% |

Gross sales, cost of goods sold, and gross profit reported on petitioner's returns for 1974, 1976, and 1977, and the ratio of gross profit to gross sales were as follows:

TABLE III

|  | Per return | As proposed by IRS |
|---|---|---|
| **1974** | | |
| Gross receipts/sales | $32,645,993 | $32,645,993 |
| Cost of goods sold | 28,139,441 | 26,886,983 |
| Gross profit | 4,506,552 | 5,759,101 |
| Ratio of gross profit to gross sales | 13.80% | 17.64% |
| **1976** | | |
| Gross receipts/sales | $37,715,898 | $37,715,898 |
| Cost of goods sold | 32,076,553 | 31,486,206 |
| Gross profit | 5,639,345 | 6,229,692 |
| Ratio of gross profit to gross sales | 14.95% | 16.51% |
| **1977** | | |
| Gross receipts/sales | $42,601,935 | $42,601,935 |
| Cost of goods sold | 38,375,334 | 37,906,094 |
| Gross profit | 4,226,601 | 4,695,841 |
| Ratio of gross profit to gross sales | 9.92% | 11.2% |

During 1974, 1975, 1976, and 1977, petitioner added to its LIFO inventories all costs related to uncompleted long-term contracts. As a result of computing the uncompleted long-term contract costs under the LIFO method, petitioner's consolidated LIFO reserves were increased by $1,252,458, $590,347, and

$469,239 for 1974, 1976, and 1977, respectively. Petitioner's consolidated LIFO reserve for 1975 was reduced by $17,309. Because of these adjustments to petitioner's LIFO reserves, petitioner's cost of goods sold was increased by $1,252,458, $590,347, and $469,239 for 1974, 1976, and 1977, respectively, and was reduced by $17,309 for 1975.

Respondent disallowed the adjustments to petitioner's consolidated LIFO reserve for 1974, 1975, and 1976 on the ground that the costs of completing the contracts were not inventory but deferred expenditures and therefore only deductible in the year in which the contract price is reported as income, i.e., the year in which the contract is completed. Using the same reasoning, respondent reduced petitioner's cost of goods sold for 1977 by $469,239 during the examination that preceded respondent's deficiency notice.

Petitioner executed, and respondent accepted, a Form 870-AD, pursuant to which petitioner agreed not to file a claim for refund or credit, and respondent agreed not to reopen the determination of petitioner's income tax liability with respect to the years 1974 through 1977, with the exception as to whether petitioner was entitled to employ the LIFO method of inventorying materials purchased specifically for long-term contracts and labor and other costs related to the completion of the contracts, or whether all of these costs were to be treated as deferred expenditures (and therefore only deductible as part of the cost of a particular contract in the year of contract completion).[1]

Respondent seeks in this proceeding reversal of our decision in *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029 (1982). In that case, on facts identical in all material respects to those presented in the instant case, we held (1) that the taxpayer's use of inventories to determine the

---

[1] The parties have stipulated that if petitioner's use of LIFO inventory accounts to accumulate the costs of long-term contracts, which were accounted for under the completed contract method of long-term contract accounting, is determined to be a permissible accounting method, then petitioner would be entitled to the 1977 net operating loss carryback, investment tax credit carryback, and new jobs credit carryback that respondent disallowed in his notice of deficiency.

In addition, the parties have stipulated that in the event of a favorable decision herein for petitioner, petitioner would be entitled to a new jobs credit carryback from 1978 to 1976 in the amount of $17,768, a net operating loss carryback from 1979 to 1976 in the amount of $44,5534, and an investment tax credit carryback from 1979 to 1976 in the amount of $27,068. Petitioner would not be entitled to any investment tax credit carryback from 1978 to 1976 because the credit would be carried back entirely to 1975.

cost of goods sold was proper, even though the taxpayer was a manufacturer who reported income from long-term contracts under the completed contract method of accounting, and (2) that the taxpayer's use of the LIFO (last-in, first-out) method of inventory valuation in valuing the inventoried contract costs clearly reflected the taxpayer's income.

Respondent's arguments in support of his contention that petitioner, a manufacturer who employs the completed contract method of accounting, may not use LIFO inventories in computing its contract costs are the same as those that he advanced in *Peninsula Steel*, namely: (1) That the use of the completed contract method of accounting and the use of inventories are mutually exclusive, and (2) that the use of the LIFO method of inventory valuation in conjunction with the completed contract method of accounting distorts petitioner's income by accelerating and exaggerating the deductions for contract costs.

Alternatively, respondent argues that if petitioner's method of deferring its contract costs by accumulation in LIFO inventories is proper, then petitioner must allocate the deferred contract costs to the long-term contract in the year the materials are assigned to the contract, and not in the year of completion. Respondent maintains that materials which have been specifically ordered for a long-term contract or that can be associated specifically with a long-term contract should be directly allocated to the contract.

Petitioner, in addition to contesting the deficiencies asserted by respondent, has requested an award of reasonable attorneys' fees in its petition.

Because we find the case before us to be indistinguishable from *Peninsula Steel*, we hold that *Peninsula Steel* controls our decision herein. In so holding, we have, however, taken this occasion to reexamine our opinion in *Peninsula Steel*, particularly in view of a recent contrary decision by the U. S. Claims Court;[2] but, for the reasons set forth below, we have found nothing to dissuade us from following the views espoused in *Peninsula Steel*.

Because respondent's determination in the notice of deficiency constitutes a challenge to the propriety of petitioner's

---

[2]*Spang Industries, Inc. v. United States*, 6 Cl. Ct. 38 (1984).

choice of accounting methods,[3] our analysis begins with a discussion of the rules governing accounting methods generally.

Section 446(a)[4] requires a taxpayer to compute his taxable income by using the method of accounting under which he regularly computes his income in keeping his books.[5] The term "method of accounting" denotes not only the taxpayer's overall method of accounting, but it also includes the accounting treatment of any material item, such as inventory. Sec. 1.446–1(a)(1), Income Tax Regs.

While section 446(c)[6] and the regulations thereunder authorize the use of certain specified methods, sections 1.451–3 and 1.451–5, Income Tax Regs., provide special methods of accounting for income from long-term contracts. As we pointed out in *Peninsula Steel*, 78 T.C. at 1043, these provisions of the Code and the regulations in effect afford a taxpayer with income from long-term contracts the choice of using one of the following overall accounting methods: (1) Cash, (2) accrual (including accrual shipment method), (3) percentage of completion, (4) completed contract, or (5) a combination of the foregoing to the extent permissible under section 1.446–1(c)(1)(iv), Income Tax Regs.

Although a taxpayer is free generally to choose his method of accounting, his choice will be respected only where, in the

---

[3]Because respondent did not specifically refer to the clear reflection of income standard of sec. 446(b) in either the notice of deficiency or the answer, petitioner maintains on brief that the question of whether petitioner's accounting method clearly reflects income is not properly before the Court. We do not agree. In our view, any challenge by the Commissioner to a taxpayer's accounting method is necessarily grounded upon the authority granted him by sec. 446(b). In addition, petitioner has premised its contest of the deficiencies asserted by respondent on *Peninsula Steel*, which was decided under sec. 446(b). We fail to see any "unfair surprise" to petitioner and are bolstered in our conclusion by the fact that the evidence relevant to respondent's mutual exclusivity argument is the same as that apposite to the clear reflection question.

[4]All section references are to the Internal Revenue Code of 1954 as amended and as in effect during the years at issue.

[5]SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

[6]SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

opinion of the Commissioner, it clearly reflects income. Sec. 446(b); sec. 1.446–1(a)(2), Income Tax Regs. Section 446(b) specifically authorizes respondent to compute a taxpayer's income under a method that clearly reflects income where the taxpayer's chosen method does not satisfy the clear reflection standard.

The discretion granted respondent under section 446(b) is quite broad, and, therefore, respondent's determination that an accounting method does not clearly reflect income is entitled to more than the usual presumption of correctness. *Commissioner v. Hansen*, 360 U.S. 446, 467 (1959); *United States v. Catto*, 384 U.S. 102, 114 (1966). The taxpayer's burden in overcoming respondent's determination is consequently a heavy one. *Peninsula Steel*, 78 T.C. at 1044–1045. However, where a taxpayer succeeds in proving that his chosen method clearly reflects income, respondent must respect the taxpayer's choice.

The question of whether a particular accounting method clearly reflects income is primarily a factual question that varies from business to business. *Sam W. Emerson Co. v. Commissioner*, 37 T.C. 1063, 1067 (1962). Where the taxpayer demonstrates that his chosen method accords with generally accepted accounting principles and complies with respondent's regulations, the taxpayer's choice ordinarily will be regarded as clearly reflecting income if that method has been consistently used. Secs. 1.446–1(a)(2), 1.471–2(b), Income Tax Regs.; *Peninsula Steel*, 78 T.C. at 1045.

In the present case, we are concerned with two "methods of accounting" used by petitioner. Petitioner has reported its income and expenses attributable to its long-term contracts under the completed contract method of accounting, and it has used LIFO inventories to compute the costs allocable to its long-term contracts. Respondent does not dispute the propriety of petitioner's use of the completed contract method. Rather, respondent contends that petitioner may not use LIFO inventories in computing its contract costs because the use of any inventory method in conjunction with the completed contract method is not permitted under the regulations. More specifically stated, it is respondent's contention that inventories and the completed contract method are mutually exclusive.

The completed contract method of accounting, the use of which is specifically authorized by section 1.451–3, Income Tax Regs., allows a taxpayer whose income is derived from long-term contracts to account for the entire results of a contract at one time. *Peninsula Steel*, 78 T.C. at 1046. Consequently, in the year that a contract is completed, income from the contract is recognized, and the costs of completing the contract are deducted. Sec. 1.451–3(d)(1), Income Tax Regs. As we pointed out in *Fort Pitt Bridge Works v. Commissioner*, 24 B.T.A. 626 (1931), revd. on other grounds 92 F.2d 825 (3d Cir. 1937), this method is especially appropriate to a taxpayer engaged in the business of performing contracts where the contracts overlap accounting periods and where the ultimate profit or loss from the contract cannot be ascertained until the contract is completed.

The use of inventories is governed by section 471 and the regulations thereunder. Section 471 provides as follows:

> Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

The regulations provide that "inventories * * * are necessary in every case in which the *production*, purchase or *sale* of merchandise is an income-producing factor," and further provide that inventories are to include both raw materials and work-in-process. Sec. 1.446–1(a)(4)(i) and sec. 1.471–1, Income Tax Regs. (Emphasis added.) Numerous courts, including this one, have recognized that the rule that inventories are required wherever the production and sale of merchandise is an income-producing factor also applies to those cases where merchandise is produced in accordance with customer specifications. See *Frank G. Wikstrom & Sons, Inc. v. Commissioner*, 20 T.C. 359 (1953).

In the present case, there is no dispute that petitioner was engaged in the production and sale of merchandise. Thus, under section 1.471–1 of the Income Tax Regs., petitioner would appear to fall within the rule requiring inventories. Respondent, however, reads section 1.451–3 of the Income Tax Regs., as precluding the use of inventories by a taxpayer who

employs the completed contract method. Section 1.451–3 of the Income Tax Regs., in relevant part, provides as follows:

(d) *Completed contract method*—(1) *In general.* Except in cases to which subparagraph (2), (3), or (4) of this paragraph applies, under the completed contract method, gross income derived from long-term contracts must be reported by including the gross contract price of each contract in gross income for the taxable year in which such contract is completed (as defined in paragraph (b)(2) of this section). *All costs which are properly allocable to a long-term contract (determined pursuant to subparagraph (5) of this paragraph) must be deducted from gross income for the taxable year in which the contract is completed.* In addition, account must be taken of any material and supplies charged to the contract but remaining on hand at the time of completion. [Emphasis added.]

Respondent interprets the direction that the deduction of costs "properly allocable to a long-term contract" be deferred until the year of contract completion, as prohibiting the use of inventories in accumulating contract costs, and requiring, instead, the specific identification of costs to the long-term contract.

In *Peninsula Steel,* we expressly found that nothing in the regulations prohibits the conjunctive use of inventories and the completed contract method. We read there, as we do here, the language upon which respondent relies as simply a direction as to the timing of the deduction, and not a direction as to the manner in which contract costs should be accumulated. Other than the quoted language from section 1.451–3, Income Tax Regs., *supra,* respondent has not directed our attention in this case to (and indeed we fail to find) anything in the regulations prescribing the method for accumulating contract costs in an orderly fashion until the time arrives for recognition of income and expense.

Respondent's interpretation of the "properly allocable" language in section 1.451–3, Income Tax Regs., was accepted by the Claims Court in *Spang Industries, Inc. v. United States,* 6 Cl. Ct. 38 (1984). Despite the Claims Court's endorsement of respondent's reading of the regulation as requiring the specific identification of the costs of raw materials, labor, and overhead applied to any given contract, we believe that such an interpretation requires reading into the regulation a requirement that simply is not there.

As we pointed out in *Peninsula Steel*, the function of inventories is to determine the *amount* of deductible costs. The completed contract method, on the other hand, only addresses itself to *timing*. Section 1.451–3(d)(1), Income Tax Regs., simply requires the deferral of income and expenses associated with a long-term contract until the year of contract completion. The regulation is clearly designed to provide for the matching of income and expense associated with a particular contract. The fact that petitioner, by using inventories, computed the value of its contract costs by pooling the costs of raw materials, labor, and overhead attributable to the contracts, and then allocating a portion of that pool to the costs of goods sold in computing the income from a particular contract does not impair the matching function of the completed contract method.

The Claims Court in *Spang Industries, Inc.*, however, held that inventories were incompatible with the completed contract method[7] because the computation of costs under the inventory method violated the matching principle underlying the completed contract method. The Claims Court described the perceived mismatching as follows:

Under plaintiff's system of accounting for tax purposes, the costs of long-term work in process are accumulated on a FIFO basis (*i.e.*, actual cost) and, upon completion of the contract, are then retrieved from the in-process accounts and charged to cost of sales. So far, so good. Then, however, there is added to the cost of sales the LIFO value of the accumulated costs of work remaining in process. In other words, the measure of inflation inherent in the costs of current work in process (their LIFO value) is attributed to the current year's completed contracts. And therein lies the problem. Whereas the regulation demands that costs be deferred and matched with the revenue they helped produce, plaintiff's use of LIFO does neither: it permits the current costs of long-term contracts in process (for which the regulation prescribes deferral) to affect the measure of income realized under contracts other than those for which those costs were incurred. The result, in other words, is to match current costs with current sales.

The governing regulation, however, prescribes that current costs be deferred and matched with future sales. And in that framework—where the scheme is to relate cost and revenue on a contract-by-contract basis—deferral is as much a mechanism of cost determination (*i.e.*, valuation) as it is a mechanism of cost timing. It cannot be otherwise without offense to the

---

[7]Because the Claims Court held that the taxpayer could not use inventories while reporting its long-term contract income on the completed contract method, the Court did not address the issue as to whether the taxpayer could use the LIFO method of inventory valuation.

notion of pairing the revenue from a long-term contract activity with its identified costs as accumulated over time.

[*Spang Industries, Inc. v. United States*, 6 Cl. Ct. 38, 44 (1984).]

As we see it, the misalignment of cost and revenue that the Claims Court perceived in *Spang* was due to the taxpayer's use of the LIFO method of inventory valuation and not to the taxpayer's use of inventories. Further, the Claims Court assumed that the actual flow of costs through the taxpayer's manufacturing process was that of FIFO (first-in, first-out). While one would expect, based upon this analysis, that a completed contract method taxpayer would be permitted to compute its contract costs by using FIFO inventories (if one accepts the assumption that costs actually flow on a FIFO basis), the Claims Court nonetheless held that inventories may never be used by a completed contract method taxpayer. The inherent inconsistency of this analysis leaves us unpersuaded.

As previously discussed, we do not believe that the matching function of the completed contract method is undermined by the use of inventories to value deferred contract costs. Because, in our view, the pertinent regulation does not demand the specific identification and segregation of costs to a particular contract, we cannot accept the premise that the cost-deferral requirement means that the values of costs allocated to a contract must necessarily be the actual or historical costs, or even costs computed on a FIFO basis.

While recognizing that both inventories and the completed contract method are designed to match income and expense, respondent maintains that inventories and the completed contract method are conceptually incompatible. Respondent maintains that inventories operate to determine income or loss on an annual basis, whereas he perceives the completed contract method as "an exception to the annual accounting period." Respondent's perception of the completed contract method as an adjustment of the annual accounting requirement is, in our opinion, in error. The Code requires that every taxpayer must compute his taxable income on the basis of his taxable year (or annual accounting period). Sec. 441; sec. 1.446–1(a)(4), Income Tax Regs. In computing his taxable income, the taxpayer must account for all items of income and expense that are properly includable or deductible within his taxable year as determined by his accounting method. Secs.

451, 461. The completed contract method, which is a variant of the strict accrual method (*Fort Pitt Bridge Works*, 24 B.T.A. at 641), simply determines which items of income and deduction are to be taken into account in computing taxable income for any given taxable year. Thus, we do not view the completed contract method as posing any exception to the requirement that taxable income must be computed and reported on an annual basis,[8] and, therefore, we fail to see any inherent incompatibility between the completed contract method and inventories.

In summary then, we find nothing in the regulations that would preclude the use of inventories in conjunction with the completed contract method. Nor do we find any inherent conflict between the two methods on the functional or conceptual level. Consequently, we conclude that a completed contract method taxpayer (such as petitioner) may, consistent with the regulations, use inventories in computing the costs of completing contracts.

Given our conclusion that petitioner's use of inventories in conjunction with the completed contract method conforms to the regulations, we must next consider the other factors relevant to the question of whether petitioner's use of inventories clearly reflected its income, namely, (1) whether petitioner's use of inventories conformed to generally accepted accounting principles, and (2) whether petitioner's use of inventories in conjunction with the completed contract method was consistent.

We find that petitioner's practice is in accordance with generally accepted accounting principles. The Claims Court in *Spang Industries, Inc.*, correctly pointed out that Accounting

---

[8]We note that in *Spang Industries, Inc.*, supra, the Claims Court, in holding that the completed contract method and the use of inventories are mutually exclusive, subscribed to the view that the completed contract method is not "an annual accounting system." We do not dispute the court's description of the completed contract method as allowing a taxpayer to report the economic results of long-term contracts in the year of completion, rather than reporting the results annually based upon interim estimates. It is, however, an accounting method and, like any accounting method recognized by the tax laws, only operates to determine which transactions, or items of income or expense, are to be accorded tax significance in any given tax accounting period (taxable year). Our tax system embraces numerous accounting methods and special accounting rules that postpone the tax recognition of transactions to a taxable year other than the year incurred. None of these methods or special rules, including the completed contract method, excuse a taxpayer from accounting for income annually; all of them, including the completed contract method, simply allocate to any given taxable year the items of income and expense that must be reported within that year.

Research Bulletin No. 45, issued by the Committee on Accounting Procedure of the American Institute of Certified Public Accounts (AICPA), suggests that the excess of accumulated contract costs over related billings (which is reported as a current asset) should be described in the balance sheet as " 'costs of uncompleted contracts in excess of related billings' rather than as 'inventory' or 'work in process.' " ARB No. 45, "Long-Term Construction-Type Contracts," par. 12 (October 1955). However, as we noted in *Peninsula Steel*, 78 T.C. at 1048–1049 & n. 30, the American Institute of Certified Public Accountants, in its guidelines for applying ARB No. 45, states that none of the characteristics of the completed contract method require "accounting for contract costs to deviate in principle from the basic framework established in existing authoritative literature applicable to inventories or business enterprises in general." See par. 71, Statement of Position 81–1, "Accounting for Performance of Construction-Type and Certain Production-Type Contracts" (July 15, 1981), appended to AICPA, Audit and Accounting Guide, "Construction Contractors" 105–149 (1981). We therefore attach little weight to the AICPA's suggestion as to the labels to be used on the financial statements in view of its recognition of the applicability of inventory principles in accounting for deferred contract costs.

Respondent claims that *Peninsula Steel* was incorrectly decided based upon his contention that "the Court erroneously rejected a long standing accounting practice for long-term contracts that a taxpayer who reports income from such contracts on the completed contract method may not consider as inventory the cost of material, labor, supplies etc. accumulated with respect to such contracts." Although respondent does not directly cite any authority or introduce any evidence to demonstrate the existence of this "long standing accounting practice," we think it fair to assume that respondent relies here upon Rev. Rul. 59–329, 1959–2 C.B. 138, which is cited elsewhere in his brief.

As we pointed out in *Peninsula Steel*, Rev. Rul. 59–329[9] must

---

[9]Rev. Rul. 59–329, provides, in relevant part, as follows:

"A taxpayer who, under section 1.451–3 of the Income Tax Regulations, reports income from long-term contracts on the completed contract method may not consider as inventory, for Federal income tax purposes, the cost of materials, labor, supplies, depreciation, taxes, etc., accumulated

be read in context. All of the authorities cited in Rev. Rul. 59–329 address the question of whether a particular expense, incurred in connection with a long-term contract, is deductible in the year incurred or in the year the contract is completed. None of these authorities set forth any rules for determining the manner of accumulating costs once the determination has been made that a particular cost is a deferred contract cost. Thus, we concluded in *Peninsula Steel*, 78 T.C. 1051–1052, as follows:

Rev. Rul. 59–329, then, rests on a foundation that is consistent with our reconciliation of the regulations, and which does not conflict with * * * [the] use of inventories for the purpose of determining amounts of cost of goods sold.

We find further support for limiting the scope of Rev. Rul. 59–329 by the fact that the ruling was published at a time when the regulations recognized the use of the completed contract method only by taxpayers engaged in long-term construction. Sec. 1.451–3, Income Tax Regs. (1957).[10] These taxpayers were generally not allowed the use of inventories. E.g., *Gersten v. Commissioner*, 28 T.C. 756 (1957), affd. and revd. on other issues 267 F.2d 195 (9th Cir. 1959); *Colony, Inc. v. Commissioner*, 26 T.C. 30 (1956), affd. that issue 244 F.2d 75 (6th Cir. 1957), and revd. on the other issue 357 U.S. 28 (1958). On the other hand, the propriety of the use of inventories by manufacturers of custom order goods has been recognized by a number of courts. See *Frank G. Wikstrom & Sons, Inc. v. Commissioner*, 20 T.C. 359 (1953). We doubt that the ruling was ever intended to apply to manufacturers and, therefore, reject respondent's attempted application of the ruling to petitioner.

Given our determination that petitioner's use of inventories conformed to both the regulations and generally accepted

with respect to such contracts. Such costs merely represent deferred expenditures which are to be treated as part of the cost of the particular contract and are to be allowed as a deduction for the year during which the contract is completed and the contract price reported as gross income. See Revenue Ruling 288, C.B. 1953–2, 27, at 28; I.T. 3434, C.B. 1940–2, 90; and A.R.R. 8367, C.B. III–2, 57 (1924). * * *"

[10]The regulations were revised in 1976 to authorize use of the completed contract method by manufacturers. T.D. 7397, filed Jan. 14, 1976, 1976–1 C.B. 115. Prior to the amendment of the regulations, case law recognized the availability of this method to manufacturers. See *Stephens Marine, Inc. v. Commissioner*, 430 F.2d 679 (9th Cir. 1970); *McMaster v. Commissioner*, 69 T.C. 952 (1978); *Fort Pitt Bridge Works v. Commissioner*, 24 B.T.A. 626 (1931).

accounting principles, we next turn to the question of whether petitioner's use of inventories was consistent. The record before us clearly shows that petitioner has consistently used inventories in computing costs of goods sold since at least 1970. This consistent use of inventories is, as was the case in *Peninsula Steel*, a factor weighing heavily in petitioner's favor.

In view of our fundamental disagreement with the Claims Court on the compatibility of the inventory and completed contract methods, distinguishing the present case from *Spang Industries, Inc.*, is not essential to our determination herein. Nevertheless, we believe that it is, at least, worth noting in this context that the genesis of the dispute in *Spang* can be traced to the taxpayer's adoption of an inventory method following a practice of accumulating the specifically identified costs of each long-term contract.[11] This change in method by the taxpayer in *Spang* contrasts markedly with petitioner's consistent use of inventories in determining the cost of goods sold.

In summary, we find that petitioner's use of inventories in conjunction with the completed contract method was in accord with generally accepted accounting principles and that it was consistently applied from 1970 through the years at issue. Respondent has not persuaded us that the combined use of inventories and the completed contract method is inconsistent with the regulations. We hold therefore that petitioner's use of the two methods clearly reflected petitioner's income.

In so holding, we are mindful that the regulations expressly recognize that a uniform accounting method cannot be prescribed for all taxpayers and that the appropriateness of any given method will depend upon the particular taxpayer's needs. Sec. 1.446–1(a)(2), Income Tax Regs. In the present case, we find that petitioner's use of inventories was appropriate in view of petitioner's method of operation. Petitioner maintained a stock of raw materials on hand, besides purchasing materials for specific contracts. However, the materials purchased for specific contracts were not necessarily used on that contract. To require petitioner to ascertain the cost of each flange, coupling, beam, or angle used on any particular contract would be, in our view, clearly impracticable. Thus,

---

[11]*Spang Industries, Inc. v. United States*, 6 Cl. Ct. at 48, Appendix, Findings of Fact No. 6.

here, as in *Peninsula Steel,* practical considerations dictated the use of inventories to accumulate in an orderly manner the costs of raw materials and of work-in-process until the time arrived for the matching of revenues and expenses.

Having determined that petitioner's use of inventories in conjunction with the use of the completed contract method of accounting was proper, we turn to respondent's second objection to petitioner's accounting method. Respondent contends that the valuation of inventories under the LIFO method results in the deduction of the costs of uncompleted contracts prior to the year of completion and, therefore, results in a distortion of petitioner's income.

Section 472(a)[12] allows a taxpayer who is either required or permitted to maintain inventories the option of valuing inventories under the LIFO method. The LIFO method is based on the accounting convention that the goods purchased last are deemed to be the first goods sold and that ending inventories are deemed to be composed of the earliest purchased goods. This convention reverses the assumed order of goods flowing through inventories valued under the FIFO (first-in, first-out) method. The theory justifying the LIFO method is generally that the determination of income may be more accurate by matching current costs with current revenues, thereby eliminating from income any inflation-induced and therefore artificial profit. *Peninsula Steel,* 78 T.C. at 1054; *Fox Chevrolet, Inc. v. Commissioner,* 76 T.C. 708, 723 (1981).

An initial election of LIFO is a change in accounting method. Sec. 1.446–1(e)(2)(i), Income Tax Regs. As a general rule, a taxpayer may only initiate an accounting method change after he obtains the Commissioner's consent. Sec. 446(e). However, where a taxpayer properly elects the LIFO method, the taxpayer is excepted from the prior consent requirement of section 446(e), and is, instead, subject to the requirements governing the election under section 472 and the regulations thereunder. *John Wanamaker Philadelphia, Inc.*

---

[12]SEC. 472. LAST-IN, FIRST-OUT INVENTORIES.

(a) AUTHORIZATION.—A taxpayer may use the method provided in subsection (b) (whether or not such method has been prescribed under section 471) in inventorying goods specified in an application to use such method filed at such time and in such manner as the Secretary may prescribe. The change to, and the use of, such method shall be in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income.

*v. United States*, 175 Ct. Cl. 169, 175, 359 F.2d 437, 440 (1966); *Peninsula Steel*, 78 T.C. at 1055. Respondent's discretion as to an initial election of LIFO is much more circumscribed than in the case of changes of accounting methods generally. *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. at 1055.

Respondent does not maintain that petitioner's manner of electing LIFO was improper. It is his contention that petitioner's use of LIFO violates the clear reflection of income standard of section 446(b) because, he claims, the LIFO method necessarily results in the deduction of the costs of contracts in progress in a year prior to the year of completion.

At the outset, we note that Congress authorized the LIFO method of inventory valuation by all taxpayers properly maintaining inventories. Sec. 472(a); *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029 (1981); *Basse v. Commissioner*, 10 T.C. 328 (1948); *Hutzler Bros. Co. v. Commissioner*, 8 T.C. 14 (1947). We have held, *supra*, that petitioner's use of inventories was proper, and therefore find that this precondition to the use of LIFO was satisfied. While the regulations under section 472 provide detailed rules for the use of LIFO, neither these regulations nor the long-term contract regulations restrict in any way the use of the LIFO method by a taxpayer using the completed contract method of accounting. Thus, we do not find that the use of the LIFO method of inventory valuation is legally inconsistent with the completed contract method of accounting.

It is not true, as respondent would have us find, that petitioner's use of LIFO in valuing its inventories resulted in the acceleration of deductions for contract costs. By its very nature, the LIFO method of inventory valuation results in the assignment of the costs of the most recently purchased materials to the contracts completed during the year. But the adjustments which petitioner made on its books to convert from FIFO to LIFO are not additional deductions claimed with respect to the completed contracts (i.e., for costs that otherwise would not yet be deductible because allocable to currently unfinished contracts) but instead represent the difference between valuing the costs under the two different inventory valuation methods. *Peninsula Steel*, 78 T.C. at 1057. The determination of the value to be placed upon an inventory, and

therefore upon the cost of goods sold, is an inquiry that is separate and distinct from the determination of when income is to be recognized and expenses are to be deducted. *American Can Co. v. Bowers*, 35 F.2d 832, 835 (2d Cir. 1929).

In this case, as in *Peninsula Steel*, respondent has perceived a distortion from petitioner's use of LIFO that we simply fail to find. A comparison of the gross profit to gross sales ratios for the years in issue (table III *supra*) and the preceding years (table II *supra*) does not disclose any significant distortion of petitioner's income. What we said in *Peninsula Steel* in this context is equally applicable here.

> Since respondent's perceived distortion of income appears to merely be the difference in the deduction for costs of completed contracts when the most recent costs (LIFO) are used rather than earliest costs (FIFO), we are convinced, on the facts of the instant case, that respondent's determination is more of an expression of preference for FIFO over LIFO than a determination that petitioner's consistent use of LIFO to value inventories will not reasonably reflect consolidated income. See *Klein Chocolate Co. v. Commissioner*, 36 T.C. at 147. While we recognize that respondent possesses broad powers under section 446(b) to determine whether an accounting method clearly reflects income, we do not believe respondent may compel a change from a permissible method of accounting which clearly reflects income in accordance with the regulations to another permissible method that is preferred by respondent. * * * We think such a rule is particularly appropriate with respect to LIFO, a method expressly authorized by statute, and intended to be available to all taxpayers properly maintaining inventories * * * [78 T.C. at 1058; citations omitted.]

Having determined that petitioner's use of LIFO inventories clearly reflects its income and is consistent with the regulations, we find that respondent has no authority to compel petitioner to change to the method that he proposes herein.[13]

In conclusion, we hold that the present case is indistinguishable from, and therefore controlled by, *Peninsula Steel*. Accordingly, we hold that petitioner's use of LIFO inventories to accumulate the costs associated with the performance of its

---

[13]Respondent alternatively argues that, assuming that the LIFO inventory method is available to a completed contract method, petitioner's income would be more clearly reflected if petitioner is only allowed to accumulate costs in inventory until either the materials are assigned to a long-term contract or until the materials are specifically ordered for a long-term contract. This in effect is the position adopted in the proposed regulations issued on Mar. 14, 1983. Sec. 1.472–1(m), Proposed Regs., 48 Fed. Reg. 10718 (Mar. 14, 1983). In view of our holding that petitioner's accounting method clearly reflected income, we need not consider respondent's alternative argument beyond noting that nothing in the current regulations applicable to this case would require adopting respondent's approach here.

long-term contracts was proper, and that respondent lacked the authority to change the accounting method employed by petitioner.

With respect to petitioner's request in the petition for an award of attorneys' fees, petitioner has not cited to any statute that would authorize such an award nor has it advanced any arguments on brief justifying an award. As we stated in *McQuiston v. Commissioner*, 78 T.C. 807 (1982), affd. without published opinion 711 F.2d 1064 (9th Cir. 1983), this Court has no power to award attorneys' fees or costs under the Equal Access to Justice Act (28 U.S.C. sec. 2412). Section 7430 of the Internal Revenue Code, as added by Pub. L. 97–248, only authorizes awards of reasonable litigation costs in cases begun after February 28, 1983. 96 Stat. 324, 572. Because petitioner filed its petition in March of 1981, section 7430 does not apply. Therefore, in this case, we have no jurisdiction to award attorneys' fees.

To reflect the foregoing,

*Decision will be entered under Rule 155.*