HENRY B. AMES AND DORTHA S. AMES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ames v. Commissioner
Docket No. 32613-83.
United States Tax Court
T.C. Memo 1985-443; 1985 Tax Ct. Memo LEXIS 189; 50 T.C.M. (CCH) 891; T.C.M. (RIA) 85443; August 22, 1985. Edward G. Lavery, for the petitioners. Rebecca W. Wolfe, for the respondent. DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was assigned to Special Trial Judge Daniel J. Dinan pursuant to the provisions of section 7456(c) and (d) [1] and General Order No. 8, 81 T.C. XXIII (1983). *190 This matter is before the Court on respondent's motion for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent determined deficiencies in petitioners' Federal income tax for the years 1980 and 1981 in the amounts of $1,343 and $1,554, respectively. The principal adjustment to petitioners' Federal income tax returns for the years in issue was the disallowance of a claimed partnership loss in the amount of $3,995 for each year on the ground, inter alia, that the method of accounting used by the partnership did not properly and correctly reflect income, and created a distortion of income. The legal issue presented is whether the Commissioner abused his discretion in disallowing the claimed interest deductions. The facts are not in dispute. Petitioners were residents of Ogden, Utah, when they filed their petition in this case. On December 30, 1980, petitioners formed a partnership known as Ames and Ames (the partnership) for *191 the purpose of purchasing real estate; each owns a 50 percent interest in the partnership. On the same date, December 30, 1980, petitioner H. Boyd Ames executed a real estate contract on behalf of the partnership with WRK Enterprizes, a Utah partnership, for the purchase of one time share unit in Kilburn Vacation Homeshare properties located near Park City, Utah. One time share unit is equivalent to one day's use of a vacation home each year. The average rent for one day in a Kilburn Vacation Home was $120 in 1980. Under the terms of the contract, the purchase price of the time share unit purchased by petitioners was $2,775. That amount included the purchaser's share of furniture and personal property in the unit. The purchase price was to be paid as follows: $650 as a cash down payment and the balance of $2,125 to be paid at the rate of $465 per year for a period of 10 years beginning on December 31, 1980, with the entire balance of principal and accrued interest due and payable on or before December 31, 2009. The $465 payments were to be applied first to the payment of interest and second to the reduction of principal. Beginning on December 31, 1980, and through December 31, 1993, interest *192 accrues on the unpaid balance of the purchase price at the rate of 188 percent per year ($3,395). Beginning on December 31, 1994, and for the remainder of the term of the contract, interest will accrue on the unpaid balance of the purchase price at the rate of 47 percent per year ($998.75). Under the terms of the contract, interest is not earned or accrued on unpaid interest. [3] A final balloon payment is to be paid by the purchaser on December 31, 2009, in the amount of $69,475. The terms of the contract provide that there shall be no personal liability for payment of the debt incurred as a result of a purchase. Upon default by a purchaser, the sole remedy retained by the seller is the right to foreclose on the property. The unpaid balance of principal and interest, therefore, is a nonrecourse indebtedness secured by the time share unit. The seller assumed that the time share unit would appreciate at an annual rate of 11.75 percent for 30 years and that its value would equal the purchase price and the interest accrued thereon in 2009. Ames and Ames filed U.S. *193 Partnership Returns of Income (Forms 1065) for the years 1980 and 1981 upon which the accrual method of accounting was elected. The partnership reported no income from the one day time share unit in 1980 and 1981; it claimed an interest deduction of $3,995 in each of those years. Petitioners claimed a distributive loss from the partnership in the amount of $3,995 on their Federal income tax return for each of the years 1980 and 1981. In his brief, respondent informs us that the partnership's method of allocating greater interest expense to the initial years of the term of the note is similar to the Rule of 78's. In their brief, petitioners obligingly accept respondent's characterization of the partnership's method of accounting as being similar to the Rule of 78's and then submit a lengthy legal argument defending the partnership's use of that method of accounting. Respondent's reference to the Rule of 78's in the context of this case is patently erroneous. Under the Rule of 78's, the amount of interest allocable to each payment period over the term of the loan is determined by multiplying the total interest payable by a fraction the numerator of which is the number of payment *194 periods remaining in the term of the loan at the time of the calculation (including the period for which the calculation is made) and the denominator of which is the sum of the digits of the term of the loan. In this case, the total interest payable on the unpaid balance of the purchase price, based upon an annual interest rate of 16.75 percent, is $10,678.12 ($2,125 X 16.75% X 30 years). The denominator of the fraction determined in accordance with the Rule of 78's is 465. See James Brothers Coal Co. v. Commissioner,41 T.C. 917 919 (1964). The following table, applying the Rule of 78's to the facts in this case, illustrates the amounts of principal and interest that would be payable over the term of the note (the amounts stated are rounded off to two decimal points): Year
Principal
Interest
Total
1
$137.09
$688.91
$826.00
2
132.52
665.94
798.46
3
127.95
642.98
770.93
4
123.38
620.01
743.39
5
118.81
597.05
715.86
6
114.24
574.09
688.33
7
109.67
551.12
660.79
8
105.10
528.16
633.26
9
100.53
505.20
605.73
10
95.96
482.23
578.19
11
91.39
459.27
550.66
12
86.82
436.31
523.13
13
82.25
413.34
495.59
14
77.68
390.38
468.06
15
73.11
367.41
440.52
16
68.54
344.45
412.99
17
63.97
321.49
385.46
18
59.40
298.52
357.92
19
54.83
275.56
330.39
20
50.26
252.60
302.86
21
45.69
229.63
275.32
22
41.12
206.67
247.79
23
36.55
183.70
220.25
24
31.98
160.74
192.72
25
27.41
137.78
165.19
26
22.84
114.81
137.65
27
18.27
91.85
110.12
28
13.70
68.89
82.59
29
9.13
45.92
55.05
30
4.56
22.96
27.52
Totals
$2,124.75
$10,677.97
$12,802.72
*195 The following table, prepared by the sellers of the time share unit in issue, illustrates the amounts of interest accruable by the partnership over the term of its contract with WRK Enterprizes: VACATION HOME
ONE DAY PURCHASE Home Value
$2,775.00
Furnishings
Included
Purchase Price
2,775.00
Down Payment
- 650.00
Balance Due
$2,125.00
Accrued
Interest
Interest
12/31 of
Note
Rate of Note
Periods
Year
Interest
Payment
Balance
Balance
1
1980
$4,000
$465
$5,660
188.2%
2
1981
4,000
465
9,195
70.7%
3
1982
4,000
465
12,730
43.5%
4
1983
4,000
465
16,265
31.4%
5
1984
4,000
465
19,800
24.8%
6
1985
4,000
465
23,335
20.2%
7
1986
4,000
465
26,870
17.1%
8
1987
4,000
465
30,405
14.8%
9
1988
4,000
465
34,940
13.1%
10
1989
4,000
465
37,475
11.4%
11
1990
4,000
0
41,475
10.6%
12
1991
4,000
0
45,475
9.6%
13
1992
4,000
0
49,475
8.7%
14
1993
4,000
0
53,475
8.0%
15
1994
1,000
0
54,475
7.4%
16
1995
1,000
0
55,475
1.8%
17
1996
1,000
0
56,475
1.8%
18
1997
1,000
0
57,475
1.7%
19
1998
1,000
0
58,475
1.7%
20
1999
1,000
0
59,475
1.7%
21
2000
1,000
0
60,475
1.6%
22
2001
1,000
0
61,475
1.6%
23
2002
1,000
0
62,475
1.6%
24
2003
1,000
0
63,475
1.6%
25
2004
1,000
0
64,475
1.5%
26
2005
1,000
0
65,475
1.5%
27
2006
1,000
0
66,475
1.5%
28
2007
1,000
0
67,475
1.5%
29
2008
1,000
0
68,475
1.4%
30
2009
1,000
0
69,475
1.4%
APR = 16.75%
*196 It is demonstrably clear that the foregoing table, which purports to allow the partnership an accrual of interest in the total amount of $72,000 over a thirty year period on an indebtedness of $2,125 is not even remotely germane to the Rule of 78's. We have frequently addressed ourselves to the discretion granted respondent in matters of accounting methods by section 446(b) and have consistently held that he has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income. In Brooks-Massey Dodge, Inc. v. Commissioner,60 T.C. 884, 890-891 (1973) we said: At the outset, it is important to point out that section 446(b) gives respondent broad discretion in matters of accounting methods. Schlude v. Commissioner,372 U.S. 128, 136 (1963); American Automobile Association v. United States,367 U.S. 687 (1961); Mooney Aircraft, Inc. v. United States,420 F.2d 400 (C.A. 5, 1969). * * * Thus, respondent's determinations made pursuant to his authority under section 446(b) bear a presumption of correctness which stands unless petitioner is able to prove them clearly erroneous or arbitrary. *197 * * * (Footnote reference omitted.) In the recent case of Surtronics, Inc. v. Commissioner,T.C. Memo. 1985-277 (filed June 11, 1985), we held as follows: For income tax purposes, the general rule with respect to a taxpayer's method of accounting is that his taxable income shall be computed using the method of accounting regularly used to keep his books and compute his income. Section 446(a). However, section 446(b) provides that if the method of accounting used by a taxpayer does not clearly reflect his taxable income, respondent may compute such income by using a method which in the opinion of respondent does clearly reflect the taxpayer's income. The authority vested in respondent under section 446(b) is very broad and in matters of accounting he has wide latitude to change the method of accounting so as to clearly reflect income. See Thor Power Tool Co. v. Commissioner,439 U.S. 522, 532 (1979); Commissioner v. Hansen,360 U.S. 446, 467 (1959). Furthermore, respondent's determination under section 446(b) is presumptively correct and must be upheld unless the taxpayer can prove that it is clearly erroneous or arbitrary. *198 Lucas v. Kansas City Structural Street Co.,281 U.S. 264, 271 (1930); Brooks-Massey Dodge, Inc. v. Commissioner,60 T.C. 884, 891 (1973). Respondent's first argument in support of the disallowance of the claimed interest deductions is that the partnership's method of allocating greater interest expense to the initial years of the term of the note, similar to the Rule of 78's, is not an allowable method since it results in a material distortion of income; his second argument is that the use of the accrual method of accounting by the partnership does not clearly reflect income, because the deduction of the accrued but unpaid interest results in a material distortion of income. Although we have rejected respondent's representation that the method of accounting used by the partnership to compute the amount of the interest deductions claimed by it for the years in issue is in any way similar to the Rule of 78's, his determination that the method used by the partnership to determine the amount of the deductions claimed materially distorts income is presumptively correct and must be upheld unless the taxpayers can prove that it is clearly erroneous or *199 arbitrary. Surtronics, Inc. v. Commissioner,supra. This they have failed to do. Since we previously have set forth at length our reasons for finding that the Rule of 78's has no relevance to this case, we need not address ourselves to petitioners' argument pertaining to the Rule. We have searched the record in vain to find any information which would indicate the financial or tax method of accounting used by the partnership to determine the amount of the interest expenses claimed by it for each of the years in issue. Petitioners have completely failed to carry their heavy burden of proving that the partnership's accounting method clearly reflected income. See Reco Industries, Inc. v. Commissioner,83 T.C. 912, 920 (1984). The only evidence in this record indicating how the amounts of the interest claimed by the partnership were determined is contained in the agreement between the partnership and WRK Enterprizes, dated December 30, 1980, in which it was arbitrarily determined that interest would accrue at the rate of 188 percent per year on the unpaid balance of the purchase price ($2,125) for the first 14 years of the term of the loan and *200 47 percent per year for the last 16 years of the terms of the loan. We know of no financial or tax method of accounting that would justify the use of such figures. Accordingly, we will grant respondent's motion for partial summary judgment on this issue. The deficiencies determined for the years 1980 and 1981 are still in issue and must be disposed of by trial or otherwise. Because we have found that respondent did not abuse his discretion in disallowing the $3,995 claimed as an interest deduction by petitioners in each of the years in issue, we need not address ourselves to the question of whether the partnership may use the accrual method of accounting to compute its interest deductions. We will defer the resolution of that issue to another day. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during 1980 and 1981.↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The sellers represented to the purchasers that the annual percentage rate of the loan was 16.75 percent.↩