**SPANG INDUSTRIES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–1961.**

United States Court of Appeals, Federal Circuit.

May 29, 1986.

Rick L. Frimmer, Reed Smith Shaw & McClay, Philadelphia, Pa., argued, for appellant. With him, on brief, was Norman W. Goldin, Reed Smith Shaw & McClay, Washington, D.C.

William Whitledge, Tax Div., Dept. of Justice, Washington, D.C., argued, for appellee. With him, on brief, were Michael L. Paup and Ann Belanger Durney.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and BENNETT, Senior Circuit Judge.*

FRIEDMAN, Circuit Judge.

This tax refund case, here on appeal from a judgment of the United States Claims Court in favor of the United States, involves the propriety of the method of accounting the taxpayer used in determining profits and losses for the particular tax year in which it completed contracts that required more than a year to perform. The Claims Court, 6 Cl.Ct. 38 upheld the Commissioner's rejection of the taxpayer's method of accounting. We reverse.

I

A. The taxpayer, Spang Industries, Inc. (Spang), manufactured and fabricated steel and electric products under long-term contracts that typically required more than a year to complete. Spang conducted its business through two divisions, the Fort Pitt Bridge Division (Fort Pitt) and the Magnetics Division (Magnetics), which had been separate corporations but were

* Judge Bennett took senior status on March 1, 1986.

merged in 1970 to form Spang. We sometimes refer to these separate corporations as "Spang."

Fort Pitt fabricated bridge parts as a subcontractor in accordance with state-required specifications. In any year Fort Pitt worked on approximately 25 contracts. Magnetics manufactured electrical systems, components, and devices. The systems, but not the other products, were made in accordance with the customers' precise specifications. In any year, Magnetics worked on 30–40 contracts.

Although Fort Pitt ordered steel for specific jobs, on 10–15 percent of the jobs the steel ordered for one job was used on another contract. Magnetics maintained a substantial stock of raw materials and parts and basically purchased for use on particular contracts only the instruments. From 60–90 percent of the materials that Magnetics used to manufacture its products were taken from stock.

For tax purposes, Spang generally used the accrual method of accounting, but for purposes of reporting profits and losses from its long-term contracts it used the completed-contract method of accounting. Under that method, income (or loss) from a particular long-term contract was recognized and expenses attributable to that long-term contract were deducted only in the year in which the contract work was completed. Spang maintained records of the costs incurred under those contracts by accumulating the costs attributable to each contract on a single job sheet and entering those costs on the job sheet when they were incurred. Spang then computed its long-term completed-contract income by subtracting the costs incurred on each particular contract, as reflected by the total of the amounts entered on the corresponding job sheet, from the total revenue received on each of those contracts completed during the year.

For purposes of financial reporting of raw materials, labor, and overhead costs on unfinished contracts, Spang also maintained records and accounts necessary to estimate income and expenses each year under the percentage-of-completion method of accounting. These accounts were maintained on a first-in-first-out (FIFO) basis. One of these accounts reflected the total costs incurred on all of its open contracts, and another reflected the billings on all of its open contracts. The excess of the former over the latter represented Spang's investment in its open contracts.

Beginning with the tax year ending January 31, 1970, for federal tax purposes Spang valued its accounts that represented its investment in its open contracts, by the last-in-first-out (LIFO) method of valuation. Spang also filed a Form 970, "Application to Use LIFO Inventory Method," commencing with that taxable year.

In order to value its investment in its open contracts under the LIFO method, Spang maintained two separate accounts showing the total actual cost of raw materials purchased and the costs of producing and shipping its products (work in process). At the end of each year Spang converted that work-in-process cost to its LIFO value and entered the difference between FIFO cost and LIFO cost in a general-ledger LIFO reserve account.

At the end of its tax year, Spang reported as income all revenue earned on contracts completed during the year and it deducted all costs incurred on those contracts, as reflected in the job sheet for each contract. It also deducted, as an addition to cost of goods sold, the difference between the FIFO and LIFO work-in-process costs associated with its long-term contracts completed during that tax year as reflected in the LIFO reserve account.

Upon an audit of Spang's tax years ending January 31, 1973, and 1974, the years here at issue, the Commissioner rejected the deduction for the LIFO reserve accounts, and determined deficiencies. Spang paid the deficiencies and, after the Commissioner denied Spang's claims for refund, filed the present suit for refund.

B. The Claims Court sustained the Commissioner's determination. The court held that Spang's use of inventories in conjunc-

tion with the completed-contract method of accounting was impermissible because Spang's deduction of associated costs from the LIFO reserve account, which reflected inflationary costs inherent in its ongoing contracts in process, from income attributable to contracts that were completed in a particular tax year, accelerated the deductions attributable to the long-term contracts in process. The court stated that the pertinent "regulation demands that costs be deferred and matched with the revenue they helped produce," while Spang's method of accounting "permits the current costs of long-term contracts in process ... to affect the measure of income realized under contracts other than those for which those costs were incurred." *Spang Industries, Inc. v. United States,* 6 Cl.Ct. 38, 44 (1984).

## II

Spang's use of the completed-contract method of accounting for its long-term contracts in process, which Treasury Regulation 1.451–3(b)(2) (1973) permitted, has not been questioned. This method of accounting is designed to provide an alternative to the annual-accrual method of accounting for long-term contracts for which the ultimate profit or loss is not ascertainable until the contract is completed. *See Reco Industries v. Commissioner,* 83 T.C. 912 (1984), *appeal docketed,* No. 85–1792 (4th Cir. July 30, 1985). The method "allows a taxpayer whose income is derived from long-term contracts to account for the entire results of a contract at one time." *Id.* at 921.

At oral argument the government conceded that if Spang's use of inventories in conjunction with the completed-contract method of accounting was proper, Spang's use of the LIFO method of valuing its inventory also was permissible under section 472(a) of the Internal Revenue Code of 1954 (Code), 26 U.S.C. § 472(a) (1982), which permits a taxpayer who is required or permitted to use inventories to value them on a LIFO basis. Since the Commissioner disallowed the deduction for the increase in the LIFO reserve account that

reflected the difference between Spang's FIFO and LIFO costs on the ground that Spang was not permitted to use the LIFO cost method of inventory pricing with respect to its costs of uncompleted long-term contracts, *Spang,* 6 Cl.Ct. at 42, the validity of his determination depends upon the propriety of Spang's use of inventories.

■ The question we must decide, therefore, is whether the use of inventories is inconsistent with, and hence prohibited by, the use of the completed-contract method of accounting. Contrary to the decision of the Claims Court and the position of the Commissioner, we conclude that Spang properly used inventories in conjunction with its use of the completed-contract method of accounting for its long-term contracts.

A. None of the statutory provisions or regulations governing the completed-contract method of accounting or the use of inventories bars the latter in conjunction with the former. Section 446(a) of the Code provides that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 446(c) permits the computation of

taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

Section 471 provides that "[w]henever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe." None of these provisions addresses the issue before us.

The Commissioner has authorized the completed-contract method of accounting

for long-term contracts in a regulation that provides that the "[g]ross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted [and] ... there shall be deducted from gross income from such year all expenses which are properly allocable to the contract." Treas. Reg. § 1.451–3(b)(2) (1973). The regulation, as amended, and which applies retroactively to this case under section 7805(b) of the Code, specifies what costs properly are allocable to a long-term contract, and requires that the cost of material "which becomes an integral part of the subject matter of the long-term contract, ... the cost of labor which can be identified or associated with a particular long-term contract ... [and other costs] which are incident to and necessary for the performance of [a] particular long-term contract[ ]" be allocated to that contract and "must be deducted from gross income for the taxable year in which the contract is completed." Treas.Reg. § 1.451–3(d)(1), (5)(i)–(ii) (1976). Like the Code provisions cited above, this regulation does not bar the use of inventories in conjunction with the completed-contract method of accounting.

The regulations dealing with inventories similarly do not deal explicitly with the question whether inventories may be used in conjunction with the completed-contract method of accounting. They do, however, at least suggest that such use is possible.

Treasury Regulation section 1.471–1 states that "[i]n order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor." The "production ... of merchandise" is an "income-producing factor" for Spang. The provision applies to merchandise that is produced according to customer specifications, as was mainly the case here. *See Frank G. Wickstrom & Sons, Inc. v. Commissioner,* 20 T.C. 359 (1953).

The lack of any prohibition in the regulations upon the use of inventories in conjunction with the completed-contract method of accounting is highlighted by the fact that regulations the Commissioner proposed in March 1983 specifically dealt with this issue for the first time. Those proposed regulations provided that "the long-term contract methods described in § 1.451–3 are not inventory methods of accounting." Proposed Treas.Reg. § 1.471–4(d); § 1.472–1(m). They also provided that for taxable years after December 31, 1982,

> the taxpayer may not use the LIFO inventory method described in section 472 ... to determine the costs attributable to a long-term contract accounted for under a long-term contract method, including the use of such methods to determine the cost of materials assigned to a long-term contract or to determine the cost of finished or semi-finished components assigned to a long-term contract. See § 1.471–4(d) and § 1.472–2(m).

Proposed Treas.Reg. § 1.451–3(a)(6). When those proposed regulations became final in December 1985, they eliminated the foregoing language and provided that for taxable years after December 31, 1982, under some conditions "the taxpayer may use an inventory method to determine the costs attributable to a long-term contract accounted for under a long-term contract method." Treas.Reg. § 1.451–3(a)(6) (1986).

B. The regulations treat the use of inventories as a method of accounting and permit a combination of methods of accounting that clearly reflects income. I.R.C. § 446(a), (c); Treas.Reg. § 1.446–1(a)(1), (a)(2), (c)(1)(iv) (1973). A method of accounting clearly reflects income if it complies with "generally accepted accounting principles in a particular trade or business ... provided all items of gross income and expenses are treated consistently from year to year." Treas.Reg. § 1.446–1(a)(2) (1973). Spang's method of accounting met both of these requirements and, therefore, clearly reflected income and was permissible.

Accounting literature has recognized that when the completed-contract method of accounting is used with long-term contracts, the costs of the raw materials used on those contracts are inventory costs to which inventory valuation principles are to be applied. Defliese, Johnson and Macleods, *Montgomery's Auditing*, p. 369 (9th Ed.1975); Miller, *Miller's Comprehensive GAAP Guide*, pp. 24.18–24.19 (1982). Furthermore, the Accounting Standards Division of the American Institute of Certified Public Accountants has stated that "[n]one of the characteristics peculiar to [the completed-contract method of accounting] ... require accounting for contract costs to deviate in principle from the basic framework established in existing authoritative literature applicable to inventories or business enterprises in general." Statement of Position 81-1, "Accounting for Performance of Construction-Type and Certain Production-Type Contracts," ¶¶ 69–71 (July 15, 1981), appended to A.I.C.P.A., *Audit and Accounting Guide*, "Construction Contractors," pp. 105–149 (1981).

The Claims Court stated, and the government repeats the argument here, that the American Institute of Certified Public Accountants, in its Accounting Research Bulletin No. 45, "Long-Term Construction-Type Contracts, ¶ 12 (Oct.1955)," supports the Commissioner's position that inventories may not be used in conjunction with the completed-contract method of accounting. Bulletin No. 45 merely "suggested" that in using the completed-contract method of accounting, the asset items reflecting "an excess of accumulated costs over related billings ... be described as 'costs of uncompleted contracts in excess of, related billings' rather than as 'inventory' or 'work in process.'" This generalized suggestion provides little support for the conclusion that such use of inventories is not in accord with generally accepted accounting principles.

The record also shows that Spang consistently used inventories in accounting for the income on its long-term contracts. For at least four years before Spang's constituent companies began using the LIFO method for determining inventory costs, as they did in their 1969 returns, they had treated in their federal tax returns the raw materials they used in performing those contracts as inventories. In their returns for 1965 through 1969, Fort Pitt and Magnetics showed their raw material on hand at the beginning of the year as "Inventory," and deducted from their costs the "inventory" at the end of the year. (The tax return form Magnetics filed for 1965 did not contain a space showing "inventory at end of year," so Magnetics did not show that item in that return.) The 1965 form indicated that Schedule A, on which this reporting of inventories was made, was to be used "where inventories are an income-determining factor."

In its 1969 annual report to stockholders, Spang stated that it had "elected and requested approval from the Internal Revenue Service to change its method of valuation of year-end inventories from 'Fifo' ... to a 'Lifo' ... method of valuation for all permissible classes of inventory where a Lifo method ha[d] not previously been in effect." It pointed out that "[a]lthough this inventory valuation change reduced stated inventory values and thus reduced net income ... [for that year], its purpose and effect [was] to stabilize inventory valuation."

The record also contains uncontradicted testimony by Spang's chief financial officer and its independent auditor that Spang used inventories in connection with the long-term contracts of both of Spang's operating divisions from the time Spang's parent corporation acquired them in 1958 and 1963, and that in reports to its shareholders and to the Securities and Exchange Commission Spang treated these cost items as inventories.

C. The Claims Court found (finding 6), however, that Spang

did not treat its accumulated costs in contracts as inventory prior to its fiscal year ended January 31, 1970, for either financial reporting or federal income tax purposes. In all of its published finan-

cial statements, [Spang] consistently showed its accumulated costs of contracts separate from its inventories, and [Spang's] federal income tax returns did not show its accumulated contract costs as inventory. Similarly, on its financial records, [Spang's] accumulated costs in contracts were contained in an account for each of its divisions labeled "Equity" in long-term contracts or "work-in-progress", and were not shown as inventories. The term "Equity" had been used by the prior owners of Fort Pitt and neither the name nor the accounting system was changed by [Spang] from its acquisition of Fort Pitt in 1963 until its fiscal year ended January 31, 1970. From Magnetics' inception in 1958 until the fiscal year ended January 31, 1970, Magnetics did not report its accumulated contract costs as inventory for either financial reporting or tax purposes. Even though Magnetics once changed from the use of LIFO to the FIFO method of valuing its inventories in 1963, it made no change in the manner in which it calculated its costs of its long-term contracts for either financial reporting or tax purposes.

■ We cannot discern the Claims Court's basis for concluding that Spang did not treat its accumulated contract costs as inventory. As we have shown, that is precisely how Spang treated those costs at least since its 1965 return. To the extent that that finding rests upon the captions of the accounts in which Spang included its costs on work in progress on long-term contracts, it ignores the evidence we have detailed showing that since at least 1965 Spang consistently treated those costs as inventories. Although the government relies upon finding 6 in its argument, it does not set forth the evidentiary basis for that finding or attempt to show that the record supports the finding.

We therefore conclude that the statement in finding 6 that Spang "did not treat its accumulated costs in contracts as inventory prior to its fiscal year ended January 31, 1970, for either financial reporting or federal income tax purposes" is clearly erroneous because, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *accord Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed.Cir.1985).

In view of our conclusion that Spang used inventories at least since 1965, we reject the government's argument that Spang's use in 1970 of "the dollar value LIFO inventory valuation method to reallocate the costs of its long-term contracts" "changed its method of accounting for contract costs which had not previously been treated as inventory," and therefore required the consent of the Commissioner under section 446(e) of the Code before Spang could use LIFO. Section 446(e) provides that "a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the [Commissioner]."

The only change Spang made in its accounting system in 1970 was to substitute the LIFO method of valuing its inventory that constituted the costs incurred on its uncompleted long-term contracts for the FIFO method it previously had used. Under section 472(a) of the Internal Revenue Code, a taxpayer required or permitted to maintain inventories has the right to value those inventories at LIFO. In conjunction with the filing of its 1969 returns, Spang filed IRS Form 970, "Application to Use LIFO Inventory Method." Since Spang already was using inventories, the filing of this form was all that was necessary to authorize Spang to use LIFO; Spang was not required to obtain the Commissioner's consent before doing so. Treas.Reg. § 1.472–1(a) (1973); *John Wanamaker Philadelphia, Inc. v. United States*, 359 F.2d 437, 440, 175 Ct.Cl. 169 (1966); *Reco Industries, supra*, 83 T.C. at 929–30.

D. A key element of the Claims Court decision, which the government supports, was the court's view that Spang's use of inventories to accumulate contract costs was inconsistent with the completed contract method of accounting because the completed contract method regulations require the specific identification and matching of costs of a particular long-term contract before those costs may be considered "properly allocable to the contract" and deducted in the year of that contract's completion. According to the court, although "[t]he governing regulation ... prescribes that current costs be deferred and matched with future sales," the "result" of Spang's use of LIFO "is to match current costs with current sales" because "it permits the current costs of long-term contracts in process (for which the regulation prescribes deferral) to affect the measure of income realized under contracts other than those for which those costs were incurred."

In *Reco Industries, supra,* the Tax Court fully considered but rejected that argument. That decision, rendered after the Claims Court's decision in the present case, analyzed the issue in great detail in the light of the Claims Court's decision.** The Tax Court rejected the Claims Court's "endorsement of respondent's reading of the regulation as requiring the specific identification of the costs of raw materials, labor, and overhead applied to any given contract" because that "interpretation requires reading into the regulation a requirement that simply is not there." 83 T.C. at 922.

The Tax Court stated that the provisions of the regulation governing the allocation of costs under the completed-contract method of accounting is "simply a direction as to the timing of the deduction, and not a direction as to the manner in which con-

tract costs should be accumulated." *Id.* It pointed out that

the function of inventories is to determine the *amount* of deductible costs. The completed contract method, on the other hand, only addresses itself to *timing.* Section 1.451–3(d)(1), Income Tax Regs., simply requires the deferral of income and expenses associated with a long-term contract until the year of contract completion. The regulation is clearly designed to provide for the matching of income and expense associated with a particular contract. The fact that petitioner, by using inventories, computed the value of its contract costs by pooling the costs of raw materials, labor, and overhead attributable to the contracts, and then allocating a portion of that pool to the costs of goods sold in computing the income from a particular contract does not impair the matching function of the completed contract method.

*Id.* at 923.

The court further stated:

[W]e do not believe that the matching function of the completed contract method is undermined by the use of inventories to value deferred contract costs. Because, in our view, the pertinent regulation does not demand the specific identification and segregation of costs to a particular contract, we cannot accept the premise that the cost-deferral requirement means that the values of costs allocated to a contract must necessarily be the actual or historical costs, or even costs computed on a FIFO basis.

*Id.* at 924.

We agree with and adopt that analysis and reasoning.

The Claims Court also referred, apparently with approval, to the government's argument that Spang's "added deduction of

---

** In an earlier decision, *Peninsula Steel Products & Equipment Co. v. Commissioner,* 78 T.C. 1029 (1982), the Tax Court had upheld the use of inventories in conjunction with the completed-contract method of accounting.

The Claims Court decided the present case after the Tax Court decision in *Peninsula Steel,*

which it discussed but by which it was "unconvinced." In *Reco Industries,* the Tax Court, "particularly in view of" the contrary Claims Court decision in this case, "reexamine[d]" at length its prior opinion in *Peninsula Steel* and concluded that that case had been decided correctly. 83 T.C. at 918.

the LIFO reserve ... is impermissible ... because it assigns to the cost of completed work the inflation-based expense inhering in work-in-process." That argument, however, is but another formulation of or explanation for the contention, which we have rejected, that the regulations require a specific matching of costs and revenues of the particular contract. Indeed, the LIFO method of determining costs is designed to reflect cost increases that result from inflation. For this reason, and contrary to the government's contention, Spang's use of inventories and the LIFO method of valuing them has not distorted Spang's income. *Reco Industries, supra,* 83 T.C. at 930–31.

Although the government asserts that Spang's use of inventories in conjunction with its completed-contract method of accounting did not accurately reflect Spang's income, the government has failed to establish that conclusion.

The Claims Court apparently also concluded that Spang's use of inventories in conjunction with its completed-contract method of accounting was inconsistent with the concept of an annual accounting system, since it permitted costs incurred in one year to be charged against revenues to be received in the following years in which the particular contracts to which those costs were attributed were completed. Spang, however, does follow an annual accounting system in reporting its income from long-term contracts.

Spang reports income from particular contracts in the year in which the contract is completed. Spang uses inventories and LIFO to ascertain the costs to offset against the revenues received to determine its income for the year in which particular contracts are completed. That use of inventories and LIFO is not inconsistent with an annual accounting system. *See Reco Industries, supra,* 83 T.C. at 924–25 ("The completed contract method which is a variant of the strict accrual method ... simply determines which items of income and deduction are to be taken into account in computing taxable income for any given taxable year. Thus, we do not view the completed contract method as posing any exception to the requirement that taxable income must be computed and reported on an annual basis, and, therefore, we fail to see any inherent incompatibility between the completed contract method and inventories," *id.* at 925 (citation and footnote omitted)).

E. The government points to Revenue Ruling 59–329, 1959–2 C.B. 138, which stated:

A taxpayer who, under Section 1.451–3 of the Income Tax Regulations reports income from long-term contracts on the completed contract method may not consider as inventory, for Federal income tax purposes, the cost of materials, labor, supplies, depreciation, taxes, etc., accumulated with respect to such contracts. Such costs merely represent deferred expenditures which are to be treated as part of the cost of the particular contract and are to be allowed as a deduction for the year during which the contract is completed and the contract price reported as gross income.

As the Commissioner has recognized, a revenue ruling is entitled to some weight as reflecting the Commissioner's interpretation of the regulation, but does not have the same force as a regulation. Rev. Proc. 78–24, § 7.01(4), 1978–2 C.B. 503.

Moreover, Revenue Ruling 59–329 is ambiguous. It may be interpreted as barring under the completed-contract method of accounting only the deduction of inventory costs in the year in which they are accrued and limiting such deductions to the year in which the contract is completed. That interpretation is consistent with the statement in the ruling that those costs represent "deferred expenditures," which are to be treated as part of the cost of a particular contract in the year in which the contract is completed and the contract price is reported as gross income.

In these circumstances, Revenue Ruling 59–329 does not carry sufficient weight to overcome the considerations discussed above that have led us to uphold Spang's use of inventories.

F. Although the Commissioner has "wide discretion in determining whether a particular method of inventory accounting should be disallowed as not clearly reflective of income," *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979), this is one of those rare cases in which the Commissioner's rejection of a system of accounting cannot be upheld because it is not supported by or in accord with the governing regulations. Spang's use of inventories in conjunction with its completed-contract method of accounting was consistent with the regulations and has not been shown not accurately to reflect its income.

### CONCLUSION

The judgment of the Claims Court is reversed.

REVERSED.