SHASTA INDUSTRIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shasta Indus. v. Comm'r
Docket No. 28705-84. United States Tax Court
T.C. Memo 1986-377; 1986 Tax Ct. Memo LEXIS 229; 52 T.C.M. (CCH) 190; T.C.M. (RIA) 86377; August 14, 1986. John F. Daniels, III, for the petitioner. Martha J. Combellick, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year ending January 31, 1981, [1] in the amount of $134,649. After concessions by respondent, the issue for decision is whether the use of the LIFO method for valuing work-in-process inventory by petitioner is compatible with the use of the completed contract method. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated by reference. *232 At the time the petition was filed, Shasta Industries, Inc. (hereinafter referred to as Shasta or petitioner) was an Arizona corporation with its principal place of business in Phoenix, Arizona. Shasta was incorporated in Arizona in 1962. Its principal business, conducted under the name "Master Pools," involved the construction of commercial and residential in-ground swimming pools. Approximately 75 percent of the petitioner's total sales resulted from the construction of residential swimming pools during the taxable year at issue. Petitioner constructed approximately 1,500 to 2,000 swimming pools per year, approximately 10 percent of which were not completed at the end of any one taxable year. The average time for completion of a contract to build a residential swimming pool was 30-35 days. The average time for completion of a contract to build a commercial swimming pool was 2 months. An average pool weighs approximately 40 tons. Shasta was also engaged in the wholesale and retail sales of pool equipment, supplies, chemicals, landscaping, and spas. A standardized set of two documents was used to formalize the contractual relationship between Shasta and its customers. Petitioner *233 used a Sales Contract as the preliminary contract. The portion of paragraph 7 of the Sales Contract that deals with risk of loss and ownership provides: Any pool equipment or appurtenances subject to this contract delivered to the job site are the Owner's property and if removed or stolen are Owner's responsibility. * * * Owner agrees that during construction of the swimming pool, he will be liable for any damage to any part of the swimming pool by irrigation water, vandals, or any other persons or things not within the control of the Contractor. The initial Sales Contract established terms of payment as follows: 40 percent on the day of excavation, 30 percent on the day that the steel and plumbing were installed, 25 percent on the day that the gunite (a form of concrete) was applied, and the remaining 5 percent before plastering. After the customer and petitioner executed the Sales Contract, an employee of petitioner was sent to the site where the pool was to be constructed to lay out the size and shape of the pool on the site. After the layout was completed and acceptable to the customer, the customer or an authorized representative executed the Pool Layout Acceptance *234 Form which, together with the Sales Contract and any addenda, constituted the legal agreement between the customer and Shasta. The Pool Layout Acceptance Form, exclusive of filled-in items that were peculiar to each job, read as follows: After careful examination of our site with the layout foreman, I/we accept the layout, elevation, location, contour, size, and shape of the pool to be constructed in our yard. I agree that the signing of this accepts, without recourse, all of the above listed conditions. It is further expressly agreed by and between Master Pools and buyer herein that all right, title, possession and interest in the pool, plumbing equipment, fixtures and accessories shall remain in Master Pools until the entire purchase price of said pool has been paid and purchaser herein expressly grants permission to Master Pools to retake possession of said items for failure to complete full payment of the purchase price and does waive any claim for damages arising from said repossession. I acknowledge receipt of copied documents which include contract, plan, N.S.P.I. disclosure Arizona Chapter, and all addendums (if any). Construction did not begin until after the execution *235 of this form. Upon completion of the pool, the customer was presented with a form called a Completion Certificate which was to be signed and returned to petitioner. These three documents, the Sales Contract, the Pool Layout Acceptance Form, and the Completion Certificate, were the primary documents signed by the customer unless the job entailed unusual costs of construction that required the execution of addenda authorizing additional costs. The construction process used by Shasta was as follows: First, a layout man measured the pool location and staked out where the pool was to be constructed and determined if any utility rerouting was required. The customer executed the Pool Layout Acceptance Form at this time. The physical construction then began. At each stage of the pool construction, a construction coordinator selected the crews to perform the particular function and scheduled their projects. The layout site was excavated including dynamiting or other special techniques if necessary. The plumber installed the filter, pump, motor, and the skimmer. Steel reinforcing bars were used to form a metal basket to fit the excavation and form the shape of the pool. Wiring was *236 then added to the pool site. The necessary electrical work was done before the concrete was poured, covering the steel, plumbing and electrical work. Tile was placed around the pool surface and the deck around the pool was constructed. Final details of construction were the cleanup of the pool area, setting of the turbos, and plastering of the pool. Equipment needed to service the pool was then delivered to the pool site and the operation of the pool was explained to the customer. Most of the material and equipment used to construct the swimming pools was kept in the warehouse as inventory. The raw materials used were primarily concrete, plaster, and gunite. Construction materials obtained from inventory included a portion of the raw materials. Other items kept in inventory were: (1) plumbing materials; (2) steel; (3) heaters; (4) diving boards and slides; and (5) pool equipment such as pumps, filters, skimmers, and turbos. Some tile was also maintained as inventory. Although most supplies came from the warehouse, some materials such as concrete and tile were purchased for specific contracts and normally delivered directly to the pool site. The crew for a specific phase usually *237 went to the warehouse to pick up equipment or materials as required for the particular swimming pool. The materials or equipment that had been removed from the warehouse and used for a particular pool were removed from the inventory of construction materials and included in the work-in-process inventory for swimming pools. Specific materials required for a particular swimming pool that were not in the warehouse were allocated to the particular job as the invoices were submitted. Each of the costs for materials associated with the various phases of construction were posted at the first-in/first-out (FIFO) costs at which the items were warehoused or at the cost of purchase for newly acquired items. The costs for all completed pools and all work-in-process were converted to last-in/first-out (LIFO) at the end of the taxable year by use of a LIFO reserve account. Appropriate amounts were transferred from the work-in-process and LIFO reserve accounts to cost of goods sold for pools completed during the taxable year.The costs of pools that were not completed in a particular taxable year remained in the work-in-process and LIFO reserve accounts for adjustment at the and of the subsequent *238 taxable year. From its inception through the taxable year 1978, Shasta used the FIFO method of inventory identification. As provided by section 472, [2]Shasta applied, beginning with the taxable year 1979, to adopt and use the LIFO inventory method for raw materials inventory and work-in-process inventory for swimming pools under construction. It filed its election to adopt the LIFO method with its return for the taxable year 1979. In its LIFO election, petitioner elected to determine inventory costs by using the average cost of goods purchased during the year and also elected the dollar value, double-extension method of valuing LIFO inventories. This method of determining the costs of inventory required conversion at the end of the taxable year of the FIFO costs of items removed from the warehouse to the LIFO costs used to determine the costs of sales upon completion of each contract.The LIFO election was not made with respect to the inventories of pool equipment, supplies, and chemicals held by petitioner for sale on a retail or wholesale basis. The FIFO method of inventory continued to be used for these items. *239 Shasta maintained work-in-process accounts for swimming pools, which included the costs of licenses and fees, raw materials and equipment taken from inventory or acquired during construction, and direct labor and overhead. Beginning with the taxable year 1979, Shasta used the LIFO cost method of inventory pricing with respect to both raw materials and work-in-process. Shasta maintained LIFO reserve accounts to reflect the difference between its FIFO and LIFO costs. The LIFO reserves were calculated using the dollar value, double-extension LIFO method which determines costs at the end of the taxable year rather than on an item-by-item basis. The LIFO reserves for work-in-process were not deducted as cost of goods sold until completion of a contract. The accumulated LIFO reserve accounts that reflected the difference between the FIFO costs used in the warehouse inventory and on the job sheets, and the LIFO costs used for income tax reporting purposes where in the following accumulated amounts at the end of each taxable year as follows: 1979
1980
1981
Work-in-Process
$140,588
$312,452
$271,584
Raw Materials
23,980
45,578
36,537
LIFO Reserve
$164,568
$358,030
$308,121
*240 Petitioner filed its income tax returns on the basis of a fiscal year ending on January 31. For Federal income tax reporting purposes, Shasta generally used the accrual method of accounting. However, Shasta used the completed contract method of accounting to report profits and losses from its Master Pools operations. Since its inception, petitioner has consistently used a completed contract method of accounting for its income and expenses with respect to the construction of swimming pools for Federal income tax purposes. For financial accounting purposes, Shasta used the percentage of completion method through the taxable year 1978. Beginning with the taxable year 1979, Shasta used the completed contract method for both tax and financial accounting purposes. Under this method, petitioner recognized income at the completion of a contract, at which time the associated costs were removed from the work-in-process inventory accounts valued at LIFO and charged to costs of goods sold. Shasta did not recognize any advance payments under a purchase order or a long-term contract until the completion of each contract. The gross sales, cost of goods sold, gross profit, and gross profit *241 percentage for the taxable years 1979, 1980, and 1981 have been computed for the Master Pools division of Shasta, under the completed contract method, first using the LIFO inventory method actually used by Shasta and second using the LIFO inventory method for warehouse inventory, FIFO inventory method for work-in-process: TAXABLE YEAR 1979
Using FIFO
Actual
Work-in-Process
Gross Sales
$11,081,028
$11,081,028
Cost of Goods Sold
8,713,980
8,737,960
Gross Profit
$ 2,367,048
$ 2,343,068
Gross Profit Percentage
21.36%
21.14%
TAXABLE YEAR 1980
Using FIFO
Actual
Work-in-Process
Gross Sales
$15,222,601
$15,222,601
Cost of Goods Sold
11,460,775
11,482,373
Gross Profit
$ 3,761,826
$ 3,740,228
Gross Profit Percentage
24.71%
24.57%
TAXABLE YEAR 1981
Using FIFO
Actual
Work-in-Process
Gross Sales
$12,541,429
$12,541,429
Cost of Goods Sold
9,604,068
9,595,027
Gross Profit
$ 2,937,361
$ 2,946,402
Gross Profit Percentage
23.42%
23.49%
The Commissioner issued a statutory notice of deficiency to petitioner for the taxable year 1981. The Commissioner determined that petitioner *242 was not entitled to use the LIFO method to assign costs for materials purchased for long-term contracts or to use the LIFO method for labor and other costs applied in the completion of long-term contracts. The Commissioner stated that such costs were not inventory but were deferred expenditures which were to be treated as part of the cost of a particular long-term contract and were to be allowed as a deduction only for the year during which the contract was completed and the contract price reported as gross income. It was also determined that petitioner did not own all of the items included in inventory. Petitioner's cost of sales was accordingly decreased by the amount of the accumulated LIFO reserve as of the end of the taxable year 1981 in the amount of $308,121. The net result of this adjustment in petitioner's Federal income tax, and other adjustments that are not in issue, was a deficiency for the taxable year 1981 in the amount of $134,649. Respondent has conceded that petitioner's use of the LIFO method for valuing the four inventory categories of construction materials maintained in the warehouse was permissible thereby, decreasing the adjustment proposed for the LIFO reserve *243 in the taxable year 1981 from $308,121 to $271,584. Respondent's adjustment includes the entire amount of the LIFO reserve with respect to work-in-process that was accumulated over the course of three taxable years: 1979, 1980, and 1981, only the last of which is at issue. Should respondent prevail, petitioner has claimed a refund based on the decrease of the LIFO reserve from $358,030 at the end of the taxable year 1980 to $308,121 at the end of the taxable year 1981. OPINION The Commissioner's determination of deficiency; after concessions by respondent, increases petitioner's income by the entire amount of the accumulated LIFO reserve for work-in-process as of the end of the taxable year 1981, an amount that includes a carryover of reserves from two prior taxable years, 1979 and 1980. The adjustment was based upon a reallocation under section 481 due to the Commissioner's change in the method of accounting that he feels should have been used by petitioner. [3]
*244 The sole issue for decision is whether the use of LIFO inventories for work-in-process by petitioner is compatible with the use of the completed contract method for reporting income. Petitioner relies upon two recent cases of this Court holding that the use of inventories and the use of the completed contract method are not mutually exclusive and that they may be proper under the appropriate facts and circumstances, RECO Industries, Inc. v. Commissioner,83 T.C. 912 (1984), on appeal (4th Cir., July 30, 1985); Peninsula Steel Products & Equipment Co. v. Commissioner,78 T.C. 1029 (1982). Respondent contends, as was argued in RECO Industries, Inc. and Peninsula Steel Products & Equipment Co., that the taxpayer may not use the LIFO inventory method to identify costs with respect to work-in-process for which the income will be reported by the completed contract method, citing Spang Industries, Inc. v. United States,6 Cl. Ct. 38 (1984), revd. 791 F.2d 906 (Fed. Cir. 1986). The reversal of the Claims Court by the Federal Circuit occurred after all briefs had been filed in this case. *245 The determinations of the Commissioner in his statutory notice of deficiency are presumptively correct and petitioner has the burden of disproving each individual adjustment. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Further, Congress grants the Commissioner broad discretion to determine whether or not a taxpayer's methods of accounting clearly reflect income. Secs. 446(b), 471; Commissioner v. Hansen,360 U.S. 446, 467 (1959). Petitioner, therefore, bears the burden of proving that the LIFO method of inventory is consistent with the reporting of its income under the completed contract method and that the concurrent use of both methods clearly reflects income. The question of whether a particular accounting method clearly reflects income is primarily a factual question that varies from business to business. Sam W. Emerson Co. v. Commissioner,37 T.C. 1063, 1067 (1962). Where the taxpayer demonstrates that his chosen method accords with generally accepted accounting principles, *246 complies with respondent's regulations, and has been consistently used, the taxpayer's choice ordinarily will be regarded as clearly reflecting income. Secs. 1.446-1(a)(2), 1.471-2(b), Income Tax Regs.; RECO Industries v. Commissioner,supra at 920; Peninsula Steel Products & Equipment Co. v. Commissioner,supra at 1045. Section 446(a) sets forth the general rule that taxable income is to be "computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Further, the amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. Sec. 451(a). Taxable income may be computed under any one of several methods of accounting: cash receipts and disbursements, accrual, any other method permitted by Subchapter E (sections 441 through 483), or any combination of the foregoing methods *247 permitted under the regulations. Sec. 446(c). The method of accounting includes not only the overall method of accounting but also the accounting treatment of any material item, such as the use of inventories to accumulate costs. Sec. 1.446-1(a)(1), Income Tax Regs. The use of any method of accounting or any change in method of accounting is subject to the mandate that the method used must clearly reflect income. Sec. 446(b). A taxpayer who changes the method of accounting from the method by which he regularly keeps his books and records and computes his income must secure the consent of the Secretary of the Treasury prior to the use of the new method. Sec. 446(e). Income from long-term contracts may be reported under the percentage of completion method or the completed contract method of accounting or any other method if the method chosen clearly reflects income and is applied consistently to all long-term contracts within the same trade or business. Sec. 1.451-3(a)(1), Income Tax Regs.[4] The regulations applicable in the instant *248 case expressly permit certain manufacturers to use the completed contract method of accounting with respect to long-term contracts which are defined as building, installation, construction, or manufacturing contracts that are not completed in the taxable year in which they are entered. Sec. 1.451-3(b)(1)(i), Income Tax Regs. The long-term contract must involve either the manufacture of unique items of a type which is not normally carried in the finished goods inventory of the taxpayer, or items which normally require more than 12 calendar months to complete (regardless of the duration of the actual contract). Sec. 1.451-3(b)(1)(ii), Income Tax Regs.
*249 Under the completed contract method of accounting used by petitioner during its entire existence, the taxpayer includes the gross contract price of a long-term contract in gross income in the year in which the contract is completed. All costs which are properly allocable to the long-term contract are deducted from gross income for the taxable year in which the contract is completed, including material and supplies charged to the contract but remaining on hand at the time of completion. Sec. 1.451-3(d)(1), Income Tax Regs. This method is particularly appropriate to a taxpayer engaged in the business of performing contracts where the contracts overlap accounting periods and where the ultimate profit or loss from the contract cannot be ascertained until the contract is completed. Fort Pitt Bridge Works v. Commissioner,24 B.T.A. 626 (1931), revd. on other grounds 92 F.2d 825 (3d Cir. 1937). Petitioner's business of manufacturing individualized pools that are not carried as finished goods inventory and whose construction sometimes overlaps *250 accounting periods lends itself particularly well to the completed contract method of accounting. The Commissioner is authorized to require that taxpayers utilize inventory accounts in order that the accounting method may clearly reflect income. Sec. 471. In this instance, however, respondent argues that the combination of the completed contract method for the reporting of income and the LIFO method of valuing inventories to determine the cost of goods does not clearly reflect income. The use of inventories to determine costs arises from section 1.471-1, Income Tax Regs., which provides that inventories are necessary in order to reflect taxable income correctly in every case in which the production, purchase, or sale of merchandise is an income-producing factor. Inventories are also required when merchandise is produced in accordance with customer specifications. See Frank G. Wikstrom & Sons, Inc. v. Commissioner,20 T.C. 359 (1953). Inventories include both raw materials and work-in-process. Sec. 1.446-1(a)(4)(i), Income Tax Regs. *251 In this case, the production and sale of merchandise is the source of Shasta's income; further, the merchandise is produced in accordance with customer specifications, which factors lead to the conclusion that the use of inventories by Shasta is mandated by sections 446 and 471. This Court has held that it is permissible for a manufacturer using the completed contract method of accounting to determine the costs attributable to its long-term contracts by the use of inventories, including the LIFO inventory method. RECO Industries, Inc. v. Commissioner,supra;Peninsula Steel Products & Equipment Co. v. Commissioner,supra. The Claims Court disagreed with Peninsula Steel Products & Equipment Co. and adopted the arguments made in this case by respondent, holding that the use of inventories (valued either by the FIFO or the LIFO method) was not compatible with an accounting system which reported income using the completed contract method. Spang Industries, Inc. v. United States,supra.The Claims Court was, however, recently reversed by *252 the Federal Circuit which found that the trial court's conclusion that inventories had not been used by the taxpayer prior to the taxable years at issue was clearly erroneous. Spang Industries, Inc. v. United States, 791 F.2d at 910 (Fed. Cir. 1986). The Federal Circuit also quoted, at length and with approval, our analysis of the law in this area as set forth in Peninsula Steel Products & Equipment Co. v. Commissioner,supra and RECO Industries v. Commissioner,supra.
Respondent's contentions as to the incompatibility of LIFO inventory accounting and the completed contract differ only in minor detail from the arguments presented to us and found to be unpersuasive in RECO Industries, Inc. and Peninsula Steel Products & Equipment Co. The arguments also parallel those made before the Claims Court that were emphatically rejected by the Federal Circuit. Spang Industries, Inc. v. United States,supra. We can see no significant differences between the factual circumstances present in Peninsula Steel,RECO Industries, and Spang and the facts present in this case. Further, no legal arguments have *253 been presented that would persuade us to deviate from our view that the use of the LIFO method of valuing inventories and the use of the completed contract method of reporting income are neither inconsistent nor prohibited. Respondent asks us to overrule or distinguish our recent opinions on the grounds that the requirement that deferral of the deduction of costs "properly allocable to a long-term contract" under sections 1.451-3(a) and 1.451-3(d), Income Tax Regs., prohibits the use of inventories in accumulating contract costs and mandates the specific identification of costs. The provision relied upon by respondent serves as no more than a timing requirement and not a direction as to the manner in which contract costs should be accumulated. RECO Industries, Inc. v. Commissioner,supra at 922. The regulations simply do not contain a prohibition against the use of inventories to determine the amount of deductible costs to be applied against the gross income resulting from a long-term contract reported under the completed contract method. Peninsula Steel Products & Equipment Co. v. Commissioner,supra at 1050-1051. Shasta values its *254 warehoused materials and work-in-process inventories by use of the LIFO method. [5] The theory of the LIFO method is generally that the determination of income may be more accurate if current costs are matched with current revenues, thereby eliminating any inflation-induced profit. See Peninsula Steel Products & Equipment Co. v. Commissioner,supra at 1054; Fox Chevrolet, Inc. v. Commissioner,76 T.C. 708, 723 (1981). The LIFO method utilized by petitioner to value its inventory pursuant to its election filed with the Commissioner is expressly authorized by section 472. As this statute expressly grants taxpayers the right to elect the LIFO method for purposes of valuation of their inventory of goods, respondent's discretion as to an initial election of LIFO is clearly more circumscribed than would generally be the case as the changes of accounting method. [6]W.C. & A.N. Miller Development Co. v. Commissioner,81 T.C. 619 (1983). *255 Respondent contends that the use of LIFO inventory and the consequent LIFO reserve permits Shasta to accelerate costs allocable to work-in-process to the current taxable year and to apply those costs as costs of goods sold against the income reported for contracts completed during the current year, the income from which has been deferred from previous taxable years. The net result, argues the respondent, is a mismatch of expenses and income that does not clearly reflect income. We continue to reject this position as a misconception of the purpose of the LIFO reserve account. As we stated in Peninsula Steel Products & Equipment Co. v. Commissioner,supra:
The determination of the value to be placed upon an inventory has no relation to the principle or theory affecting the determination of when income is deemed to be received and expenses deemed, incurred. As such, the additions to the LIFO reserve account do not amount to additional deductions for inventories included in cost of good sold, but rather, represent the difference between the valuation of ending inventories using most recent costs (FIFO) and earliest costs (LIFO). Stated another way, *256 the additions to the LIFO reserve account represent the difference in the deduction for costs of completed contracts when the most recent costs are assigned to the completed contracts under LIFO as opposed to the assignment of the earliest costs on a FIFO basis. [78 T.C. at 1057; citations omitted.] The use of LIFO reserves is no more or less than a method for assigning the value of the items used in the construction of swimming pools for which the contracts have been or will be completed. It does not represent any additional materials used but merely assigns a cost to the materials used on the basis of last-in/first-out in an attempt to match the current cost of the materials to the amount currently reported as income from completed contracts. In the case of LIFO reserves for work-in-process, the reserve account serves only as a method of valuing costs which are to be deducted in the future as costs of goods and does not represent current deductions related to contracts for which the income has not yet been reported. The LIFO reserve account only has an impact on the cost of goods sold when the costs are transferred as each contract is completed, as the reserve *257 account adjusts a portion of the costs properly allocable to each completed contract from FIFO to LIFO inventory accounting. Respondent urges us to distinguish the facts and circumstances of this case from those found in RECO Industries, Inc. and Peninsula Steel Products & Equipment Co. Specifically, respondent contends that specific identification of costs is not only possible but more suited to petitioner's form of operation than the LIFO inventory method. [7] The parties stipulated, however, that most of the raw materials used for the construction of these pools was obtained from Shasta's warehouses and were not, as urged by respondent, materials ordered for specific jobs. Further, the fungible nature of steel and plaster, two of the major components of the pools, would make it extremely difficult for petitioner to specifically identify these major costs. Respondent's argument for specific identification in preference to the LIFO inventory method consistently used by the taxpayer is not supported by any statutory or regulatory requirement and is not in accord with the practical realities of the types and amounts of materials used in the construction of pools by petitioner. *258 It is a well-established principle that the Commissioner cannot require a taxpayer to change from an accounting method that clearly reflects income merely because the Commissioner considers an alternate method to more clearly reflect income. Molsen v. Commissioner,85 T.C. 485, 498 (1985). Respondent also contends that, unlike RECO Industries, Inc. and Peninsula Steel Products & Equipment Co., the items built by the taxpayer are not merchandise but are improvements to real property that may not be inventoried. Real estate and improvements to real estate are not normally considered to be "merchandise" for the purpose of determining *259 whether the use of inventories is permitted to the taxpayer. W.C. & A.N. Miller Development Co. v. Commissioner,supra at 628-630. In this case, however, Shasta is maintaining inventory in the form of materials and work-in-process, not in the form of real estate to which it holds title nor in the form of improvements to its own real estate. Respondent asks us to find that the swimming pools that are in the process of installation become fixtures to the land before transfer of title to the customer, citing Fish v. Valley National Bank of Phoenix,64 Ariz. 164, 167 P.2d 107 (1946). The swimming pools at issue are undoubtedly large and relatively difficult to remove. In size and immovability, however, they are practically impossible to differentiate from the large steel tanks in RECO Industries, Inc. or the large precipitators used in industrial air pollution control systems that were at issue in Peninsula Steel Products & Equipment Co. We cannot, and do not, find that the facts and circumstances warrant a finding that the pools at issue are not "merchandise" within the meaning of section 1.471-1, Income Tax Regs.
*260 Petitioner's accountant testified, without contradiction, that the combination of income recognition based on the completed contract method and allocation of work-in-process costs based on LIFO inventory meets generally accepted accounting principles. The completed contract method and the LIFO method of identifying inventory costs have been consistently applied by Shasta. In general, an accounting method that conforms with generally accepted accounting principles that is consistently applied will be regarded as clearly reflecting income for tax purposes. Sec. 1.446-1(a)(2), Income Tax Regs. Conformity with generally accepted accounting principles is not sufficient, however, if the result is a failure to comply with the Code or the regulations. In that case, the accounting method would fail to clearly reflect income and would not be permitted for income tax purposes. Thor Power Tool Co. v. Commissioner,439 U.S. 522, 540-544 (1979). No such failure to comply with the Code or regulations has been found. Further, the use of the LIFO method *261 for valuing work-in-process inventories has clearly not distorted the reporting of income by petitioner as its use when compared to the use of FIFO inventory valuation (normally even less favorable than the specific identification method used by respondent) has affected the gross profit percentage over the three taxable years of its use by less than two-tenths of one percent. We find that petitioner's accounting practices are in accordance with generally accepted accounting principles, that they are not prohibited by any portion of the Code or regulations, and that they also clearly reflect income. See RECO Industries Inc. v. Commissioner,supra at 925-926. A final point raised by respondent is that, even if the use of inventories are appropriate with completed contract reporting of income, Shasta did not own all of the items in its work-in-process inventory, either because petitioner never had title to the items or because title vested in the customer during the installation process. A number of the materials used were purchased for and deliverted to specific sites, but were clearly included within the general category of materials for which the contract *262 established title. Merchandise may be included in inventory only if title is vested in the taxpayer. Sec. 1.471-1, Income Tax Regs. In determining the passage of title, State law controls. Under Arizona law, the intent of the parties controls. Williams v. Long,1 Ariz. App. 330, 402 P.2d 1006 (1965). The intent of the parties, when the contractual arrangements are viewed in toto, is that title to the pools does not pass until the customer has completed payment. Although the risk of loss was assigned to the customer under the Sales Contract, the contractual provisions did not pass title to the customer but merely made the customer responsible for theft or vandalism once the goods were no longer in the possession of Shasta. Shasta retained title and reserved the right to remove the concrete, steel, and equipment, under the Layout Acceptance Form, until payment was completed. Risk of loss is but one factor to consider in determining the intent of *263 the parties as to when title passes. People v. Seymour,54 Cal. App.2d 266, 128 P.2d 726 (1942). Upon the completion of the schedule of payments established under the Sales Contract, title was effectively transferred, but not before that time. Completion of payment also, of course, triggered reporting of the entire amount of income reduced by the cost of goods sold with respect to that contract. We find that the use by petitioner of LIFO inventory for both raw materials and work-in-process together with the completed contract method of accounting for the taxable year 1981 was proper. RECO Industries, Inc. v. Commissioner,supra;Peninsula Steel Products & Equipment Co. v. Commissioner,supra.
Decision will be entered for the petitioner.
Footnotes
1. For convenience and clarity, each taxable year ending on January 31 will be referred to solely by the year in which petitioner's fiscal year ended.↩
2. All section references are to the Internal Revenue Code of 1954, and attendant regulations as amended and in effect for the relevant years, and all Rule references are to this Court's Rules of Practice and Procedure.↩
3. Respondent proposes to prohibit the use of inventories with the completed contract method of reporting income which changes the taxpayer's method of accounting. Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. If the Commissioner's change in accounting method results in the exclusion or duplication of taxable items, the Commissioner may adjust the taxpayer's income appropriately. Sec. 481; Primo Pants Co. v. Commissioner,78 T.C. 705, 726 (1982). As the change in method of accounting proposed by respondent with respect to the taxable year 1981 is not taxpayer initiated, and would result in an increase in taxable income in excess of $3,000, the adjustments and limitations of secs. 481(a)(2) and 481(b)↩ apply to limit the amount of deficiency that may be determined for the taxable year at issue with respect to adjustments resulting from the change in method of accounting.
4. The Commissioner has recently issued final regulations, effective for taxable years beginning after December 31, 1982, that permit taxpayers using the completed contract method of accounting to value the costs associated with long-term contracts under inventory methods of accounting, including the LIFO method. These regulations, however, restrict the manner in which an inventory method can be used by requiring it to be applied to value the costs of materials associated with long-term contracts in the year in which materials are purchased for a particular long-term contract or are dedicated to a particular long-term contract and not in the year in which the contract is completed. T.D. 8067, 1986-6 I.R.B. 5↩ (December 30, 1985).
5. The dollar value method of pricing LIFO inventories used by petitioner is authorized by sec. 1.472-8, Income Tax Regs.↩ As respondent has conceded that the pricing method is proper if the use of inventories in this context is found to be correct, we need not discuss further the mechanics of the pricing of the inventory. 6. From its inception, petitioner consistently used inventories in the determination of the cost of goods sold. Under section 472(a), Shasta, as a taxpayer required or permitted to maintain inventories, had the right to value those inventories at LIFO. The filing of its Form 970 with its tax return for the taxable year 1979 was all that was necessary to authorize Shasta to use LIFO; the change to LIFO was not a change in the method of accounting that required the consent of the Commissioner. Spang Industries, Inc. v. United States,791 F.2d 906, 911 (Fed. Cir. 1986), reversing 61 Cl. Ct. 38 (1984); John Wanamaker Philadelphia, Inc. v. United States,359 F.2d 437, 440↩ (Ct. Cl. 1966).
7. Although respondent has conceded that the use of LIFO inventory as to warehoused materials is proper, he wishes to require that petitioner use specific identification to identify the costs of those materials as they are transferred to work-in-process. No explanation has been offered as to how petitioner is to avoid difficulties with proper reporting of income due to the adjustments necessary with respect to the intracompany transfer.↩